480 P.2d 739

**Barbara LYON, Plaintiff and Respondent,**

**v.**

**HARTFORD ACCIDENT AND INDEMNITY COMPANY and Yosemite Insurance Company, Defendants and Appellant.**

No. 12068.

Supreme Court of Utah.

Feb. 9, 1971.

Henriod, J., did not participate herein.

Harold G. Christensen, of Worsley, Snow & Christensen, Salt Lake City, for defendants-appellant.

Robert M. McRae, of Hatch, McRae, Richardson & Kinghorn, Salt Lake City, for plaintiff-respondent.

David B. Dee and Leonard W. Burningham, Salt Lake City, Utah, Utah Trial Lawyers Assn., for amicus curiae.

CALLISTER, Chief Justice:

Plaintiff sustained serious injuries in a motor vehicle collision. She was a passenger in the automobile of one Martinez;

Yosemite Insurance Company had issued a liability policy upon this vehicle which contained an uninsured motorist endorsement in accordance with Sec. 41–12–21.1, U.C. A.1953, as amended 1967. In a separate action plaintiff was granted a jury verdict of $70,830.75 against the operators of two other motor vehicles, who were deemed jointly and severally liable. One driver, Robert G. Butcher, was insured with Allstate, his coverage conformed to the statutory minimum as provided in Sec. 41–12–5, $10,000 for bodily injury or death to one person. The other driver, Scott G. Nickel, was an uninsured motorist.

Plaintiff was an insured under a policy issued to her father by Hartford Accident and Indemnity Company, which contained an uninsured motorist endorsement with a declared limit of $20,000 per person. In addition, plaintiff was covered under a medical expense provision. At the conclusion of the plaintiff's tort action, Allstate, the insurer of Butcher, tendered $10,000, the limit of its coverage. Plaintiff received $8,000; the other $2,000 was paid to the clerk of the court because Hartford asserted subrogation rights to the $2,000 that it had paid plaintiff under the medical expenses coverage.

Plaintiff initiated the instant action to recover the benefits under the uninsured motorist coverage of both the Yosemite and Hartford policies. The trial court awarded judgment to plaintiff against Hartford for $20,000, the face amount of the uninsured motorist coverage in the policy it had issued in which plaintiff was a named insured. Plaintiff was awarded judgment against Yosemite for $10,000, the maximum coverage contained under its uninsured motorist endorsement. In addition, plaintiff was awarded $500 for reasonable attorneys' fees incurred in assisting Hartford in the recovery of $2,000 medical payments from Allstate. Hartford was awarded the $2,000 under its subrogation rights for medical payments. The trial court awarded plaintiff interest from the day of her original judgment except for the $500 attorneys' fees. Hartford appeals, and plaintiff cross-appeals.

On appeal, Hartford asserts that under the terms of its policy its obligation to plaintiff cannot exceed $10,000, under its uninsured motorist coverage, which is the difference between the policy limits of Yosemite and Hartford. The Hartford policy provides:

> With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Coverage D—Uninsured Motorists shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only

in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

In Russell v. Paulson[1] this court upheld the validity of an excess-escape clause contained in an uninsured motorist provision, wherein the insurer was obligated to pay only that amount by which the limits of its policy exceeded the limits of all other available insurance. In other words, where the insured is injured in a non-owned vehicle upon which there has been issued an uninsured motorist endorsement, the coverage to the insured under his policy constitutes excess insurance.

Subsequent to the decision in Russell v. Paulson, the legislature enacted Sec. 41–12–21.1, U.C.A.1953, as amended 1967, which provides:

Commencing on July 1, 1967, no automobile liability insurance policy insuring against loss resulting from liability imposed by law for bodily injury or death or property damage suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered, issued for delivery, or renewed in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy or a supplement to it, in limits for bodily injury or death set forth in section 41–12–5, under provisions filed with and approved by the state insurance commission for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. * * *

Plaintiff convinced the trial court that Sec. 41–12–21.1 indicated a legislative intent to overrule the holding in Russell v. Paulson; she successfully contended that this excess-escape clause limited the protection afforded the insured in a manner contrary to the policy expressed by the legislature and was therefore invalid. Plaintiff's argument is sustained by case authority, for there has been a marked divergence of opinion among the judiciary as to the proper interpretation of these uninsured motorist statutes. The two views are succinctly expressed in 28 A.L.R.3d 551, 554 Anno: Uninsured Motorists— "Other Insurance":

A number of courts have held that "other insurance" provisions, whether in the form of a "pro rata," "excess insurance," "excess-escape," or other similar clause, are invalid as a part of uninsured motorist protection, on the ground that the statute requiring every liability poli-

I. 18 Utah 2d 157, 417 P.2d 658 (1966).

cy to provide this type of protection will not permit the insurer to provide in any way that the coverage will not apply where other insurance is also "available," despite the fact that the insured may thus be put in a better position than he would be in if the other motorist were properly insured. Other courts have stated, however, that the design and purpose of uninsured motorist statutes are to provide protection only up to the minimum statutory limits for bodily injuries, and not to provide the insured with greater insurance protection than would have been available had he been injured by an insured motorist, and have held such "other insurance" provisions are valid where they do not reduce coverage below the minimum statutory limits.

 The latter view appears to be in accord with this State's statutory scheme. Section 41–12–21.1 is part of the Motor Vehicle Safety Responsibility Act; the minimum limits of uninsured motorist coverage are correlated with the minimum limits of coverage required for an automo-

bile liability policy under Sec. 41–12–5, U. C.A.1953.

In Tindall v. Farmers Automobile Management Corp.[2] the court rejected plaintiff's argument that an excess-escape clause contained in an uninsured motorist provision violated the Illinois uninsured motorist statute (paragraph 755(a) (Sec. 143a) of Chap. 73, Ill.Rev.Stat. (Ill.Ins. Code)). The court observed that the statutory provision was designed to promote and encourage protection complementary to that afforded by the financial responsibility act, thereby affording coverage to the same extent as would have been in effect if the tort-feasor had complied with the minimum requirements of the financial responsibility act.[3]

In Martin v. Christensen,[4] this court held that the provisions of Sec. 41–12–21.1 did not preclude the application of a clause providing that if the company had issued more than one policy to the insured, the insurer would be liable only up to the maximum coverage of its highest limit of any one policy for any one accident or loss. This court cited as authority M. F. A. Mu-

2. 83 Ill.App.2d 165, 226 N.E.2d 397, 28 A.L.R.3d 546 (1967).

3. Also see Harris v. Southern Farm Bureau Casualty Ins. Co., Ark., 448 S.W.2d 652 (1970) ; M.F.A. Mutual Ins. Co. v. Wallace, 245 Ark. 230, 431 S.W.2d 742 (1968) ; Jackson v. State Farm Mutual Automobile Ins. Co., La.App., 235 So. 2d 621 (1970) ; Long v. United States Fire Ins. Co., La.App., 236 So.2d 521

(1970) ; Maryland Casualty Co. v. Howe, 106 N.H. 422, 213 A.2d 420 (1965) ; contra, Morelock v. Millers' Mutual Ins. Assn., 125 Ill.App.2d 283, 260 N.E.2d 477 (1970), wherein the court, Appellate, 5th District, declined to follow the holdings of the other Illinois Appellate Courts.

4. 22 Utah 2d 415, 417, 454 P.2d 294 (1969).

tual Ins. Co. v .Wallace [5] in its rejection of the argument of insured, that the statute fixed the minimum coverage under each policy separately; and, therefore, the insured was entitled to the maximum amount under both policies.

In 52 Virginia Law Review 538, 554–557 (1966), there is an incisive critique of the recent judicial trend of permitting the stacking of policies, i. e., the courts have allowed recovery up to the combined limits of each policy available to the injured insured by ruling that "excess" or "other insurance" clauses were invalid. The author asserts that the Uninsured Motorist Acts are not being applied in a manner which places the victim of an uninsured motorist upon an equal footing with the victim of an insured motorist. In reference to the Virginia Act, the author states:

> In these cases the courts have looked only to the number of policies available to pay the judgment obtained against the uninsured motorist. No thought has been given to the fact that the act was intended merely to fill, not overflow, an insurance vacuum. Surely the General Assembly did not intend to foster a scheme whereby the innocent victim of an *insured* motorist may be penalized. It seems more logical that it intended to guarantee a source from which an insured could recover his damages up to

limits of $15,000/$30,000/$5,000 with respect to any accident.

\* \* \* \* \* \*

By their application of the Uninsured Motorist Act, the courts in many instances have placed the innocent victim of an uninsured motorist in a superior position to that which he would have occupied if his wrongdoer had had liability coverage. The pendulum has made the full swing. Before the enactment of the Uninsured Motorist Act, one who had taken pains to protect the public against the effect of his own negligence by carrying insurance was himself left unprotected against the effect of the negligence of an uninsured motorist. Today the same person, through his uninsured motorist endorsement, is usually better protected and procedurally is in a better position if the wrongdoer is uninsured.

A careful review of the case law reveals that the better reasoned cases give effect to an excess-escape clause contained in an uninsured motorist endorsement. In the instant action, the trial court erred by its refusal to apply such a clause in Hartford's policy. Plaintiff is entitled to recover only the difference between the limits of the policies issued by Hartford and Yosemite, i. e., $10,000.

Defendant, Hartford, further contends that it is entitled to set off the $2,000 that

---

5. Note 3, supra.

it has paid under the medical payments coverage against the amount that it is deemed liable to pay plaintiff under the uninsured motorist coverage. Hartford cites the following provision in its policy:

The company shall not be obligated to pay under Coverage D—Uninsured Motorists that part of the damage which the insured may be entitled to recover from the owner or operator of an uninsured highway vehicle which represents expenses for medical services paid or payable under Coverage B—Medical Expense.

A similar provision was interpreted by the court in Taylor v. State Farm Mutual Automobile Ins. Co.[6] as follows:

* * * we consider it to be designed to protect the insurance company from double exposure for medical payments. Thus, it prevents an insured whose medical expenses have been paid under the Medical Payments Coverage from collecting for those medical expenses once again, in the event that a judgment for general damages in his favor and against the insurance company under its Uninsured Motorist Coverage falls below the policy limits of that coverage. However, in a case such as Mr. Taylor's where the award for general damages exceeds the policy limits on Uninsured Motorist Coverage, the insurance company must pay its insured the full limits of the policy, in this case $5,000 regardless of what it has paid him under the Medical Payments Coverage. We are fortified in our interpretation of this amendment by the fact that this is the only just meaning that it could have. Mr. Taylor paid two separate premiums for two separate coverages. * * * To interpret the amendment as the company would have us do, would make the Medical Payment Coverage useless except in cases where the insured suffered physical injury as a result of his own negligence. * * *[7]

■ In the instant action, plaintiff's damages exceeded the policy limits under the uninsured motorist coverage, and Hartford was not subject to double exposure for plaintiff's medical expenses. Under such circumstances, Hartford was not entitled to offset the medical payments against the uninsured motorist coverage.

Plaintiff in her cross-appeal asserts that the trial court erred in its award to Hartford the $2,000 paid into the court by Allstate under Hartford's right of subrogation for medical payments, when plaintiff's damages far exceed her recovery therefor.

Subrogation springs from equity concluding that one having been reimbursed

6. La.App., 237 So.2d 690, 693 (1970).

7. Also see Hutchison v. Hartford Accident & Indemnity Co., 34 A.D.2d 1010, 312 N.Y.S.2d 789 (1970).

for a specific loss should not be entitled to a second reimbursement therefor. This principle has been accepted in the insurance field with respect to property damage, and with respect to medical costs by an impressive weight of authority. * * *[8]

The Hartford policy provides:

In the event of any payment under Coverage B—Medical Expense of this policy, the company shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

Since subrogation is an offspring of equity, equitable principles apply, even when the subrogation is based on contract, except as modified by specific provisions in the contract. In the absence of express terms to the contrary, the insured is entitled to be made whole before the insurer may recover any portion of the recovery from the tort-feasor.[9] If the one responsi-

ble has paid the full extent of the loss, the insured should not claim both sums, and the insurer may then assert its claim to subrogation.[10]

In the instant action, there are no terms in this general subrogation clause which would support Hartford's subrogation claim to the $2,000, while plaintiff remains uncompensated for her total damages. Furthermore, since Hartford is not entitled to the award, the judgment for $500 attorneys' fees as Hartford's share of expenses in recovering the medical payments cannot be sustained.

Plaintiff further asserts that since this is an action in contract between an insured and an insurer, she is entitled to interest from the date of her loss, the date of the accident, and not from the date she was granted judgment against the tort-feasors. The insurance contract provides:

The company will pay all sums which the insured shall be *legally entitled to recover as damages* from the owner or operator of an uninsured motor vehicle. * * * [Emphasis added.]

Since Hartford's obligation to perform, under the express terms of its contract with the insured, did not arise until

---

8. State Farm Mutual Ins. Co. v. Farmers Exchange, 22 Utah 2d 183, 184, 450 P. 2d 458 (1969).

9. Providence Washington Insurance Co. v. Hogges, 67 N.J.Super. 475, 171 A.2d 120, 124 (1961); First National Bank of

Lafayette v. Stovall, La.App., 128 So. 2d 712, 717 (1961); 46 C.J.S. Insurance § 1209, p. 155.

10. McConnell v. Conaway, 62 Ohio App. 335, 23 N.E.2d 970, 971 (1939).

there was a legal determination of the liability of the uninsured motorist and the extent of the damages sustained, the insured, plaintiff, is entitled to interest only from the time that judgment was rendered against the tort-feasors.

■ Finally, plaintiff contends that the trial court should have awarded her damages for Hartford's failure to bargain with her or settle her claim. She concedes that there is no case in point but asserts that this court should analogize her situation to that where a liability insurer refuses in bad faith to settle a claim with third parties within the policy limits and a judgment in excess of the policy limits is rendered against the insured.[11] She reasons that by Hartford's failure to bargain, she was compelled to incur legal expenses for which she is entitled to be compensated.

Plaintiff's analogy is untenable because of the distinction in the relationship between a liability insurer and its insured and that between the insurer and its insured in connection with an uninsured motorist. In the former situation, the insurer must act in good faith and be as zealous in protecting the interests of the insured as it would be in regard to its own.[12] In the latter situation, the insured and the insurer are, in effect and practically speaking, adversaries.[13]

The judgment of the district court is reversed, and this cause is remanded with an order to render judgment in accordance with this opinion. Each party should bear its own costs.

TUCKETT, ELLETT and CROCKETT, JJ., concur.

HENRIOD, J., does not participate herein.

---

11. Ammerman v. Farmers Ins. Exchange, 19 Utah 2d 261, 430 P.2d 576 (1967).

12. Ammerman v. Farmers Ins. Exchange, note 11, supra.

13. 7 Appleman, Insurance Law and Practice, 1970 Supp., § 4331, p. 128.