505 P.2d 783

**TRANSAMERICA INSURANCE COMPANY, a California corporation, Plaintiff and Appellant,**

v.

**Earl R. BARNES, Defendant and Respondent.**

**No. 12771.**

Supreme Court of Utah.

Nov. 17, 1972.

---

 5. Ballentine Law Dictionary page 868.

 6. 10 C.J.S. Bastards § 24.

**104**

Allan L. Larson, of Worsley, Snow & Christensen, Salt Lake City, for plaintiff and appellant.

William H. Henderson and Mark S. Miner, Salt Lake City, for defendant and respondent.

CALLISTER, Chief Justice:

Plaintiff insurer initiated this action to enforce its claimed right of subrogation to certain funds received by defendant in settlement of his tort action for personal injuries against third parties. Both parties moved for summary judgment based on the pleadings, affidavits, admissions and answers to interrogatories; the trial court granted judgment to the defendant. Plaintiff appeals therefrom and seeks judgment rendered in its favor.

Defendant was a passenger in a motor vehicle, owned and operated by one Jenson; plaintiff had issued a policy of insurance to Jenson. The vehicle was involved in a collision, and defendant sustained personal injuries. Plaintiff, under its medical expense coverage, paid defendant $1,000, the maximum benefit under the policy. Thereafter, defendant filed an action against the alleged tort-feasors, whom he claimed by their negligence caused the collision with the vehicle in which he was riding. Defendant alleged that he had sustained permanent injuries, and sought $65,000 general damages and $10,000 special damages. Plaintiff notified defendant's attorney of its claimed subrogation right; however, plaintiff refused to participate in defendant's action or to permit his counsel to act on its behalf. Defendant has emphasized that the law firm that represents plaintiff also represented the tort-feasors, with whom defendant entered into a settlement for a lump sum of $7,500. Plaintiff claims that it is entitled to reimbursement to the extent of $1,000 less a reasonable attorney's fee and its proportionate share of the costs from the fund recovered by defendant from the tort-feasors.

Plaintiff predicates its right of subrogation on three alternative theories: one, on an express contract as provided in the insurance policy issued to Jenson; two, on an implied contract as money had and received; or third, on a quasi contract for unjust enrichment.

The insurance contract provided that the company would pay, "on behalf of the insured," all reasonable medical expenses for bodily injury caused by accident and sustained by any person while occupying an owned automobile while being used by an insured. The policy further defined an "insured" as a person or organization described under "Persons Insured." Under the express provisions of the policy, an occupant of a vehicle being used by an insured was not specified as a "person in-

sured." The subrogation clause of the policy provided:

> In the event of any payment under the Liability or Medical Expense Coverage or under Part II of this policy, the company shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights. [Emphasis added.]

 From the foregoing, defendant was not an "insured" under the express provisions of the contract; and, therefore, it may not be urged that as an insured he breached the contractual provisions of the subrogation clause. Regardless of an express contract provision, an insurer may be entitled to subrogation.

Subrogation springs from equity concluding that one having been reimbursed for a specific loss should not be entitled to a second reimbursement therefor. This principle has been accepted in the insurance field with respect to property damage, and with respect to medical costs by an impressive weight of authority. . . .[1]

 Equitable principles apply to subrogation, and the insured is entitled to be made whole before the insurer may recover any portion of the recovery from the tortfeasor. If the one responsible has paid the full extent of the loss, the insurer should not claim both sums, and the insurer may then assert its claim to subrogation.[2] Subrogation is not a matter of right but may be invoked only in those circumstances where justice demands its application, and the rights of the one seeking subrogation have a greater equity than the one who opposes him.[3] Subrogation is not permitted where it will work any injustice to others. To entitle one to subrogation, the equities of one's case must be strong, as equity will, in general, relieve only those who could not have relieved themselves.[4] The purpose of subrogation, as a creation of equity, is to effect an adjustment between parties so as to secure ultimately the payment or discharge of a debt by a person who in good conscience ought to pay for it.[5]

1. State Farm Mutual Ins. Co. v. Farmers Ins. Exchange, 22 Utah 2d 183, 184, 450 P.2d 458 (1969).

2. Lyon v. Hartford Acc. & Indem. Co., 25 Utah 2d 311, 318, 480 P.2d 739 (1971).

3. Beaver County v. Home Indem. Co., 88 Utah 1, 36–37, 52 P.2d 435 (1935).

4. Ashton Jenkins Ins. Co. v. Layton Sugar Co., 85 Utah 333, 337, 39 P.2d 701 (1935).

5. Holmstead v. Abbott G. M. Diesel, Inc., 27 Utah 2d 109, 493 P.2d 625 (1972).

Plaintiff urges that defendant's settlement and release of his entire claim must necessarily include all of his medical expenses, and therefore, he has received double payment to the extent that plaintiff paid under its medical coverage. On the other hand, defendant claims that he sustained severe injuries, but he was compelled to settle for a sum that inadequately compensated him for the total damages sustained.

The settlement was for a lump sum without apportionment as to specific items of damage. From the state of the instant record, there is insufficient evidence to indicate whether defendant was paid twice. When the settlement was made, the tort-feasors or their representatives apparently had actual or constructive knowledge that some of defendant's medical expenses had previously been paid by plaintiff. Perhaps the negotiated settlement was reduced by this amount, particularly when defendant's counsel had been informed that he did not represent plaintiff's interest. If the settlement were intended to include plaintiff's prior medical expenses, two drafts should have been issued, one to plaintiff and defendant jointly and one to defendant, alone. If the settlement were made with knowledge, actual or constructive, of plaintiff's subrogation right, such settlement and release is a fraud on the insurer and will not affect the insurer's right of subrogation as against the tort-feasor or his insurance carrier.[6]

The present state of the record is inadequate to establish who has the greater equity. The record does not clearly establish that the tort-feasors or their representatives had actual or constructive knowledge of plaintiff's right of subrogation. If such fact be established, they may not disregard plaintiff's known subrogation right in settling the liability. In such a case, the tort-feasors in good conscience should discharge the liability and plaintiff does not have a right in equity superior to defendant's. Furthermore, if plaintiff had an opportunity to assert its subrogation rights to the tort-feasors and neglected to give notice or enforce its demands, the trial court may determine under such circumstances that plaintiff's rights in equity are equal or inferior to defendant's, i. e., equity will not relieve one who could have relieved himself. The plaintiff to establish a superior equity and thus to be entitled to prevail must present proof which establishes that the damages covered by defendant's settlement were the same or cover those

6. 16 Couch On Insurance 2d, § 61:197, pp. 348–350; Davenport v. State Farm Mutual Auto. Ins. Co., 81 Nev. 361, 404 P.2d 10 (1965); Hospital Service Corp. of Rhode Island v. Pennsylvania Ins. Co., 101 R.I. 708, 227 A.2d 105, 112 (1967); Sentry Ins. Co. v. Stuart, 246 Ark. 680, 439 S.W.2d 797, 799 (1969); 6A Appleman Ins. Law & Practice, § 4092, p. 246.

for which the defendant has already received indemnity from plaintiff; otherwise, the receipt of payment from the tort-feasor does not entitle the plaintiff to the return of the payments made by it.[7]

This cause is reversed and remanded for a trial in accordance with this opinion. No costs are awarded.

ELLETT, J., concurs.

TUCKETT, J., concurs in the result.

HENRIOD, Justice (dissenting):

I dissent. The main opinion indulges generalities as substitutes for the facts in subrogation matters relating to insurance contracts.

The policy in this case provided two things pertinent to this case: It insured Barnes, defendant here, who was no signatory to the insurance contract, but a beneficiary thereof, by the happenstance that he was a passenger in the car owned by the insured who paid the premium. As such beneficiary he obtained no greater rights under the policy than did the insured, and under the terms of the policy the insurance company, plaintiff here, was 1) required to pay medical benefits to the defendant, as passenger, and 2) was subrogated, in equity, which is the case here, to

any recovery for such benefits made by defendant.[1]

Defendant, having full knowledge of the policy terms, after having been paid the maximum medical benefits of $1,000 by the plaintiff insurance company, sued for *both medical and general damages.* At this point the insurance company, plaintiff here, notified Barnes of its equitable right of subrogation to recover back what it had paid Barnes ($1,000) for the medicals. Barnes settled his suit against the tort-feasor for $7,500, giving a full release for *all* claims, without insisting that the release include or exclude the medical payment of $1,000 already paid. In equity one is said to be required to do equity. If this be so, Barnes should have said "I have been paid $1,000 on the claim for medical damages which I sued you for along with general damages, and therefore I cannot give you a release for *all* claims unless you either pay an additional $1,000 to the insurance company or make out two checks, one to it for its equitable subrogation right of reimbursement of $1,000, leaving a second check to me for $6,500." Barnes having failed in equity either to notify the plaintiff company of its willingness to accept a sum for a "release of all claims," without condition or exclusion of the one claim,—

---

7. 15 Blashfield Automobile Law and Practice, § 484.6, p. 192.

1. There was nothing therein requiring the company to sue for or assist Barnes in

recovering anything other than what the company had paid under the policy; the maximum $1,000.

the medical one,—is not responsive to the maxim that "He who seeks equity must do equity."[2] It is no answer for the main opinion to return this case to determine what Barnes's understanding with the defendant tort-feasor's insurance carrier was, since such circumstances are quite irrelevant and inconsistent with any rights plaintiff and defendant here may have entertained. Barnes, defendant here, cannot adjudge the conditions under which he may give a release for all claims, without reservation, without being obligated to abide by the only contract that gave him any rights for medical payments at all—the insurance policy, and the only thing involved here. It seems silly for him to say that I am bound by the policy under which, though I was no signatory thereto, I am not bound, if the insurer doesn't intervene and protect me in some fantastic claim I made in my complaint, which I admitted in my brief that I, "Barnes, fearful of losing suit . . . *settled it for a lump sum of $7,500.*" To this author, this sounds like a first-class shakedown, and as icing on a cake that would give a double payment of $1,000 medical expense paid by the plaintiff insurance company, which latter in equity should have at least some kind of relief, and which should be the amount paid, or $1,000 as compared to $7,500 settlement which should amount to 100% recovery, in my opinion, but at least a proportionate re-

covery from Barnes. This would seem to be equity, and there is no equity in sending this case back to determine any other equities between plaintiff and defendant, since such equities already were resolved in an insurance contract, to the terms of which Barnes was but a beneficiary, not a signatory, and to which he was no party as to subrogation rights, and in which contract he was not entitled to lay down his own rules, but to whose terms, if he relies on its terms, he must comply,—one of which is that certainly he cannot sign a release of all claims unless he recognizes the rights of the contract under which he has accepted benefits, without reserving rights to the insurer in a release.

CROCKETT, J., dissents and files opinion.

CROCKETT, Justice (dissenting):

It is important to bear in mind that, as correctly set forth in the main opinion, the defendant Barnes was not an "insured" under Jensen's policy with plaintiff Transamerica. Therefore Barnes and Transamerica had no contractual relationship nor obligations to each other. Defendant Barnes simply became a third-party beneficiary of Transamerica's promise to its insured, Jensen, that it would pay up to $1000 medical to any occupant of his car who was injured. It should be assumed

**2.** State Farm Mutual v. Farmers Insurance Exchange, 22 Utah 2d 183, 450 P.2d 458 (1969).

that Jensen both desired and paid for this protection to his passengers, of which Barnes became a beneficiary. Transamerica received the premium for that protection and should fulfill that obligation and should not be permitted to sue and recover from the third-party beneficiary (defendant Barnes). Allowing it to take the money away from the intended beneficiary to reimburse itself results in, failure to fulfill the promise for which it accepted the premium, and defeats the purpose for which its insured (Jensen) paid his money.

The conclusion thus stated is affirmed by the well known authority, Couch on Insurance, Sec. 61:172, 2d Ed., wherein it is stated:

> It may be required by statute or contract that some person other than the insured shall have the benefit of the insurance procured by the insured. *When such is the case, the insurer may not assert any claim by way of subrogation against such person, [this is] on the theory that the policy is designed to afford protection to such third person and this purpose would obviously be defeated* if the insurer could sue the third person to recover from him the payments made by the insurer to the third person. (Citation) [Emphasis added.]

It is also significant that Transamerica's policy contained numerous and ample provisions for its own protection, including rights of subrogation expressly reserved to itself, but it did not include the right of subrogation against any third-party beneficiary, therefore not against one in the position of the defendant Barnes.

Further, assuming without conceding that there may be some circumstances where such a subrogation would be available to this plaintiff, it certainly would be obliged at least to make it clearly appear that $1000 of the settlement received by Barnes in the other suit was for the medical expense plaintiff had paid. On the basis of the pleadings, affidavits, admissions and answers to interrogatories, the trial court could view the facts thus: that inasmuch as the settlement of Barnes (defendant here) in the other case wherein he settled his claim of $65,000 for $7500 was indicated as being for his personal injuries, and with no segregation nor indication as to separate medical expense, there therefore would exist no reasonable basis for a finding that the $1000 medical expense which had been paid by plaintiff Transamerica was repaid in that settlement.

On the basis of what I have said above I think the trial court was justified in concluding that there was no disputed issue of fact which if resolved in favor of the plaintiff would entitle it to prevail, and that accordingly, the summary judgment was proper in order to avoid the time, trouble and expense of a trial.