Clark LAUB and Maude E. Laub,
Plaintiffs and Appellants,

v.

SOUTH CENTRAL UTAH TELEPHONE
ASSOCIATION, INC., Defendant
and Respondent.

Nos. 17925, 17926.

Supreme Court of Utah.

Dec. 29, 1982.

Gary W. Pendleton, St. George, for plaintiffs and appellants.

Leroy S. Axland, Salt Lake City, Ray H. Ivie, Ray P. Ivie, Provo, for defendant and respondent.

STEWART, Justice:

Plaintiffs Clark and Maude Laub obtained a judgment against the tortfeasor's employer South Central Utah Telephone Association (South Central) for injuries suffered in an automobile accident. On a subsequent motion by South Central, the trial court reduced the judgment by the amount of plaintiffs' economic losses previously compensated by their no-fault insurer, State Farm Mutual Insurance Company. A separate action by plaintiffs seeking contribution from State Farm for costs and attorney's fees incurred in the suit against South Central was dismissed. Plaintiffs appeal, claiming error in the court's modification of the final judgment and error in the dismissal of their contribution action. We reverse the modification of final judgment and affirm the denial of contribution for costs and attorney's fees.

Plaintiffs sustained personal injury and property damage in an accident that occurred in Mojave County, Arizona, September 4, 1978. Pursuant to their no-fault insurance policy with State Farm, plaintiffs received $4,347.71 in personal injury protection (PIP) benefits from State Farm. Since plaintiffs' damages exceeded the threshold limitations controlling tort actions against a tortfeasor, see U.C.A., 1953, § 31–41–9(1)(e), they filed suit against the tortfeasor and his employer South Central. State Farm subsequently filed notice of its claim to subrogation for the PIP benefits already paid to plaintiffs.

In December 1980, plaintiffs obtained a judgment against South Central that included amounts for damages previously compensated by the PIP benefits. To satisfy the judgment, South Central's liability insurer, Employers of Wausau, tendered to plaintiffs two checks, one in the amount of $4,347.71, payable to plaintiffs, their attorney, and State Farm, and a second check for the balance of the judgment in the amount of $31,505.39, payable to plaintiffs and their attorney. Plaintiffs filed a Satisfaction of Judgment in January of 1981.

Wausau apparently intended the check for $4,347.71 to be reimbursement to State Farm for the PIP benefits previously paid by State Farm to plaintiffs. Plaintiffs conceded State Farm's right to reimbursement, but withheld the check while filing a separate action to establish their right to retain a portion of the check as a contribution from State Farm for costs and attorney's fees incurred in obtaining that check for State Farm.

State Farm, meanwhile, relying on this Court's ruling in *Allstate Insurance Co. v. Ivie*, Utah, 606 P.2d 1197 (1980), realized that it had no subrogation rights with respect to the judgment obtained by their no-fault insured against South Central. Therefore, State Farm claimed no right to the $4,347.71 check held by plaintiffs and denied any liability for plaintiffs' costs or attorney's fees. State Farm, rather, pur-

sued its statutory remedy, *see* U.C.A., 1953, § 31–41–11, by seeking reimbursement directly from Wausau in an arbitration proceeding. On June 10, 1981, the Salt Lake Arbitration Committee entered a decision in favor of State Farm, requiring Wausau to reimburse State Farm for the $4,347.71 paid to plaintiffs pursuant to the no-fault coverage.

Because plaintiffs had retained the $4,347.71 check intended for State Farm, South Central filed, on July 2, 1981, a motion under rule 60(b), Utah R.Civ.P., to reduce the judgment against them by that amount and thereby prevent a double recovery by plaintiffs and a double payment by Wausau. The trial court subsequently granted that motion and simultaneously dismissed plaintiffs' separate action against State Farm for costs and attorney's fees.

### I. Modification of Final Judgment

Defendant South Central moved to modify a final judgment that, six months earlier, it had approved as to form and content and fully satisfied through payment by its liability insurer. To accomplish this end, South Central relies on rule 60(b), alleging not fraud, mistake, newly discovered evidence, or that the judgment was void (all but the last of which must be raised within three months of the judgment), but that the judgment should no longer have prospective application, and any other reason the Court might think of justifying relief. In relevant part the rule reads:

> On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have

prospective application; or (7) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time . . . .

This rule brings into conflict competing interests in the finality of judgments and relief from inequitable judgments. A motion to modify a final judgment is addressed to the discretion of the trial court, the exercise of which must be based on sound legal principles in light of all relevant circumstances. The court's determination may be reversed only upon a showing that this discretion was abused. In addition to the concerns that final judgments should not be lightly disturbed and that unjust judgments should not be allowed to stand, other factors the court should consider are whether rule 60(b) is being used as a substitute for appeal, whether the movant had a fair opportunity to make his objection at trial, and whether the motion was made within a reasonable time after entry of judgment. 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.19 (2d ed. 1982).

 Our consideration of these factors and the express language of rule 60(b) compel us to conclude that the trial court abused its discretion in reducing the judgment against defendant South Central. Subdivision (6) of rule 60(b) does not apply to the circumstances of this case. The third clause of subdivision (6), particularly relied on by South Central, is inapplicable because the judgment ceased to have prospective application between the parties when it was satisfied by South Central. That clause is most commonly invoked to terminate injunctions.[1]

Subdivision (7) is the residuary clause of rule 60(b); it embodies three requirements: First, that the reason be one *other* than those listed in subdivisions (1) through (6); second, that the reason justify relief; and third, that the motion be made within a

---

1. In response to Justice Howe's dissent, the satisfied judgment clause of subdivision (6) is inapplicable because first, South Central does not rely on it, and second, the judgment South Central seeks reduced is not satisfied through payment of a different judgment (in arbitration) by a third party (Wausau).

reasonable time. The reason offered by South Central as justification to reduce the judgment is that failure to reduce it will result in a partial double recovery for plaintiffs and a partial double payment by the liability insurer, Wausau. As South Central accurately states, prevention of double recovery is one of the purposes of the Utah Automobile No-Fault Insurance Act. And in keeping with that purpose, we recently upheld a trial court's reducing the special damages of a judgment by the amount of damages previously compensated by PIP benefits. *Dupuis v. Nielson,* Utah, 624 P.2d 685 (1981). *Dupuis* followed naturally from our holding in *Allstate Insurance Co. v. Ivie,* Utah, 606 P.2d 1197 (1980), that a tortfeasor is not personally liable to the injured insured for special damages previously compensated by PIP benefits from the no-fault insurer, and that the injured party should therefore not be allowed even to plead for those damages. However, if a plaintiff does improperly plead for previously compensated damages and they are allowed to be included in the judgment, the court should, at the conclusion of the trial, either on its own initiative or on motion of a party, reduce the judgment by the amount of those previously compensated damages, and thereby prevent double recovery.

■ Assuming that the reason offered by South Central to justify relief is a reason other than those listed in subdivisions (1) through (6), does it justify relief on the facts of the instant case? We hold that it does not. *Dupuis,* in which relief was granted, is distinguishable from the instant case because there the judgment was modified at the conclusion of trial and before it was accepted and satisfied. In the instant case the judgment was modified long after the time for amending the judgment (pursuant to rule 59(e)) or filing an appeal had passed and long after South Central had approved and satisfied the judgment. Clearly, under *Ivie,* plaintiffs were not entitled to previously compensated damages.

When the excessive judgment was rendered, South Central should have moved that it be reduced, as was done in *Dupuis.* Instead, South Central approved the judgment and paid it in full without objection, until six months later when it finally realized that plaintiffs were getting a partial double recovery.

■ Furthermore, both the six-month delay and the fact of prior satisfaction show that the motion was not made within a reasonable time. While we decline plaintiffs' invitation to go so far as to say that a judgment once knowingly and voluntarily satisfied becomes extinguished and is therefore never subject to modification, *see Mitchell v. Lindly,* Okl., 351 P.2d 1063 (1960), we do consider the fact of prior satisfaction an important consideration in determining whether the motion to modify was made within a reasonable time. The possibility of prejudice to the nonmoving party increases significantly when the judgment has already been paid.

Federal courts construing the identical residuary clause of rule 60(b), Fed.R.Civ.P., also deny modification on similar facts. *E.g., Hughes v. Sanders,* 287 F.Supp. 332 (E.D.Okl.1968). In *Hughes* the plaintiff was injured in an automobile accident, and because he was a member of the military, the Government paid his medical expenses under an agreement that he would reimburse the Government out of any recovery obtained from the tortfeasor. Analogously, then, the Government was in the position of a no-fault insurer. Plaintiff subsequently obtained a judgment that included the value of the medical expenses already paid by the Government. Thereafter, the Government released the needy plaintiff from his reimbursement obligation, and as a result, defendant moved, prior to satisfaction, that the judgment be reduced by the sum of the compensated medical expenses pursuant to the residuary clause of rule 60(b). The court denied the motion, reasoning:

The power given to the Court by that clause, however, "should be very cau-

tiously and sparingly invoked by the Court only in unusual and exceptional instances." [Citation omitted.] The Court does not believe that this is such a case.

*Hughes* at 334. That reasoning and result are even more applicable in the instant case since plaintiffs were under no obligation to pay the $4,347.71 check over to their no-fault insurer and defendant South Central made its motion long after satisfaction.

*George Thatcher Corp. v. Bullen,* 108 Utah 562, 162 P.2d 421 (1945), cited by South Central in support of its motion to modify the judgment, is inapplicable because it deals with a plaintiff's right to set aside a filed Satisfaction of Judgment when the judgment has not in fact been satisfied. Here we deal not with a motion to set aside a Satisfaction of Judgment, but with defendant's motion to reduce a judgment previously satisfied.

■ In summary, then, neither subdivision (6) nor subdivision (7) of rule 60(b) affords South Central relief from the judgment against it. In view of the fact that plaintiffs' judgment should never have included the previously compensated damages, defendant South Central's own mistake or neglect is the cause of plaintiffs' partial double recovery. As discussed above, South Central could have prevented this undesirable result by timely motion to strike the improper portion of the prayer for relief or to amend the judgment. This failure to act seasonably falls more accurately under subdivision (1) of rule 60(b), allowing relief from a judgment rendered by "mistake, inadvertence, surprise, or excusable neglect." However, even if subdivision (1) had been relied on, relief would still be denied for failure to make the motion within three months of the judgment. In *Richards v. Siddoway,* 24 Utah 2d 314, 471 P.2d 143 (1970), we reversed the granting of a motion to correct a nonclerical error in a judgment pursuant to subdivision (1) of rule 60(b) because, as here, the motion was made too late. The time strictures of rule 60(b) are wholesome and necessary, for there must be an end to the time when judgments can be questioned. *See also Ackermann v. United States,* 340 U.S. 193, 198, 71 S.Ct. 209, 211, 95 L.Ed. 207 (1950) (denied relief under rule 60(b): "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."). Furthermore, since subdivision (1) is applicable to the instant case, subdivision (7) cannot apply and may not be used to circumvent the three-month filing period. *Calder Brothers v. Anderson Signs, Inc.,* Utah, 652 P.2d 922 (1982). *See also Pitts v. McLachlan,* Utah, 567 P.2d 171 (1977).

## II. Attorney's Fees

Prior to passage of the Utah Automobile No-Fault Insurance Act in 1973, standard practice was for the insurer to compensate the insured for his economic losses and then seek reimbursement out of the insured's subsequent judgment or settlement. To facilitate this reimbursement process, the liability insurer would typically make one check payable to both the insured and the insurer in the amount of the compensation previously paid. Another check would be made payable to the insured alone for the balance of the judgment. Because the reimbursement fund was procured by the insured, the insurer typically contributed a fair share of the costs and attorney's fees incurred in obtaining the fund. *See Transamerica Insurance Co. v. Barnes,* 29 Utah 2d 101, 505 P.2d 783 (1972).

■ The No-Fault Act and cases construing it have significantly altered this practice. To begin with, a tortfeasor who has the required security is liable neither to the injured party nor to the no-fault insurer for reimbursement of PIP payments; therefore, the plaintiff's prayer should not include the damages compensated by the PIP payments. Since the no-fault insured should receive no funds on behalf of the no-fault insurer, the insurer has no right of subrogation as to funds obtained by the

insured through either settlement with or judgment against the tortfeasor. The no-fault insurer's only right of reimbursement through subrogation is against the liability insurer in an arbitration proceeding. *Allstate Insurance Co. v. Ivie,* Utah, 606 P.2d 1197 (1980). Since the no-fault insurer ideally will not receive its reimbursement from the no-fault insured, the practice of the insurer paying to the insured a fair share of the costs and attorney's fees is now obsolete. However, if, as in *Street v. Farmers Insurance Exchange,* Utah, 609 P.2d 1343 (1980), and *Guaranty National Insurance Co. v. Morris,* Utah, 611 P.2d 725 (1980), the parties deviate from the above-outlined practice and allow the no-fault insured to recover funds on behalf of the no-fault insurer and the no-fault insurer does in fact receive reimbursement from those funds, then the insurer must contribute to the payment of costs and attorney's fees incurred by the insured in obtaining those funds.

■ The parties in the instant case deviated from proper procedure in that plaintiffs were allowed to plead for and recover previously compensated damages. Liability insurer Wausau was mistaken in its belief that reimbursement to State Farm should pass through the plaintiffs, and plaintiffs were mistaken in their belief that they could not retain the whole of it. No-fault insurer State Farm was not entitled to the reimbursement fund held by plaintiffs, made no claim to it, and received no part of it. Therefore, State Farm need not contribute to payment of plaintiffs' costs and attorney's fees. Plaintiffs urge that State Farm is benefitted indirectly through application of collateral estoppel in the arbitration proceeding as to issues decided at trial and should therefore bear some of the costs and attorney's fees of trial. However, any

such benefit is too remote to require a sharing of costs and fees. To require contribution under such circumstances would only multiply the disputes and litigation and thus yield a result the No-Fault Act was designed to eliminate.

Affirmed in part and reversed in part.

OAKS and DURHAM, JJ., concur.

HALL, Chief Justice (concurring and dissenting):

I concur in affirming the denial of attorney fees and costs to plaintiffs. However, I dissent from that part of the Court's opinion which reverses the trial court's modification of the judgment against South Central.

The very purpose of the Utah Automobile No-Fault Insurance Act [1] is to prevent double payment for the same loss and thus to avoid increased costs of insurance coverage.[2] In furtherance of that worthy objective, the trial court appropriately modified the judgment against South Central by the specific, identifiable and undisputed amount of the PIP benefits received by plaintiffs prior to the time they initiated this lawsuit.

Plaintiffs filed this action prior to this Court's decision in *Allstate Insurance Company v. Ivie*[3] when it was common practice to plead for and recover all damages, including those covered by PIP payments previously received under first party insurance benefits. The tortfeasor's liability insurer typically made payment in two separate checks, one drawn solely in favor of the injured party covering general damages, and the other drawn jointly in favor of the injured party and his no-fault insurer covering prior PIP payments. This procedure afforded the no-fault insurer the right of subrogation to recover the PIP payments previously advanced to its insured.

---

1. U.C.A., 1953, § 31–41–1, *et seq.*

2. *Allstate Insurance Co. v. Anderson,* Utah, 608 P.2d 235 (1980).

3. Utah, 606 P.2d 1197; *Ivie* was decided February 7, 1980, after this action was filed, but before it was tried and decided on December 23, 1980.

The foregoing procedure was followed in the instant case,[4] except that plaintiffs retained the PIP check, not for the purpose of effecting a double recovery, but to compel South Central to contribute toward their costs and attorney fees in recovering the PIP payments for State Farm. Consequently, as contemplated by *Ivie*,[5] State Farm sought and obtained reimbursement of the sum of $4,347.71 from Wausau through arbitration proceedings. This placed Wausau in the unexpected and inequitable position of having to make a double payment of PIP damages. The trial court's subsequent modification of the initial judgment, reducing the amount thereof by the sum of the PIP payments, constituted an appropriate effort on the part of the court to rectify its error and to comply with the recent *Ivie* decision. In modifying the judgment, the court relied upon the provisions of Rule 60(b)(6) and (7),[6] which read in pertinent part as follows:

> On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (7) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time . . . .

The main opinion concludes that the trial court erred in relying on the foregoing rules and suggests that the only subsection of Rule 60(b) which would have supported a motion to modify in this case was subsection (1) which allows relief from a judgment rendered by "mistake, inadvertence, surprise or excusable neglect," and requires such a motion be made within three months of the date of the judgment. South Central's motion to modify was made on June 30, 1981, more than six months after judgment. Therefore, it would not qualify under subsection (1). However, under the unique facts and circumstances of this case, the need to modify did not arise within the three-month limitation period. In light of the fact that this case was tried pursuant to the pre-*Ivie* procedure, Wausau had no reason to believe that the check it had issued to plaintiffs and State Farm jointly would not eventually be endorsed to State Farm under the customary principles of subrogation. The prospect of having to make a double payment if the PIP damages did not become a reality until the arbitration decision was reached on June 10, 1981, which was five months after judgment. Wausau's need for relief did not exist prior to the arbitration decision, and promptly thereafter (on June 30, 1981) South Central brought its motion to modify based on Rule 60(b)(6) and (7).

The main opinion accurately recites the general rule of law that there must be a day when a judgment becomes final and litigation ceases, and that the filing of a satisfaction of judgment usually accomplishes that purpose.[7] However, a satisfaction of judgment does not conclusively establish the finality of the matter. Upon

---

**4.** In apparent unawareness of the intervening decision in *Ivie*.

**5.** In *Ivie*, the Court interpreted the procedure contemplated by the no-fault statute, *supra*, as follows:

> [T]he injured party should plead only for those damages for which he has not received reparation under his first party insurance benefits.

*Ivie* at 1200.

> [S]imilarly, section 11 in the Utah No-Fault Insurance Act cannot be interpreted as conferring on the No-Fault insurer a right of subrogation to the funds received by its insured for personal injuries. Section 11 grants the no-fault insurer a limited, equitable right to seek reimbursement in arbitration proceeding against the liability insurer.

*Ivie* at 1202.

**6.** Utah Rules of Civil Procedure.

**7.** *Hollingsworth v. Fire Insurance Exchange,* Utah, 655 P.2d 637 (1982).

proper motion and adequate reasons, a satisfaction of judgment can be set aside.[8] Equitable principles govern the vacation of an entry of satisfaction of judgment just as they do a motion to modify a judgment.[9] Although no specific motion to set aside the satisfaction of judgment was made in this case, it was necessarily set aside pursuant to the modification of the judgment and upon equitable principles.

I agree with the further reasoning of the main opinion that the possibility of prejudice to the nonmoving party increases significantly when the judgment has already been paid and satisfied, but that reasoning has no application to the particular facts of this case. What possible prejudice could inure to plaintiffs by invalidating the $4,347.71 PIP check issued by Wausau, which plaintiffs never expected to retain, and which has never been negotiated? The check is still uncashed, and now that the instrument is more than six months old, by statute it need not be honored.[10] It is therefore not only reasonable, but incumbent upon this Court to apply principles of equity in this matter and sustain the reduction of judgment against South Central, thus fulfilling the objective of the law without causing undue prejudice to any party.

The judgment of the trial court is supported by the practice followed in the federal courts. Rule 60(b)(5) of the Federal Rules of Civil Procedure is identical to Rule 60(b)(6) of the Utah Rules of Civil Procedure, and the provision "no longer equitable that the judgment should have prospective application" has been construed as follows:

> The reference in clause (5) to judgment which it is "no longer equitable" to apply prospectively invokes *equitable principles* for relief from the prospective operation of a judgment which long antedate the Federal Rules of Civil Procedure. Those principles are invariably applied by the courts in construing Rule 60(b)(5), and the leading decisions explicating those principles bear exposition. For example, it is established that a change in conditions, whether a fact or by subsequently enacted statute, may warrant relief from a final judgment, but only from the prospective application of that judgment. [Emphasis added.]

14 A.L.R.Fed. 309 § 3(b).

Justice in this case demands that the principles of equity be applied. There has been an obvious change in conditions. The *Ivie* decision came down while this case was pending in the trial court, changing the customary procedure followed in applying the no-fault statute. This prompted State Farm's otherwise unexpected arbitration proceeding against Wausau to recover the PIP payments which had already been paid jointly to the plaintiffs and State Farm in accordance with the trial court's judgment. Certainly, these were changed circumstances within the contemplation of the Rule.[11]

Furthermore, the judgment still has prospective application. This is so notwithstanding the fact that the judgment has been paid and a satisfaction of judgment filed, because the $4,347.71 check representing the PIP payments previously made by Wausau remains unnegotiated.

In such circumstances, the sage advice of Justice Cardozo regarding the application of Rule 60(b)(5), *supra,* has full application:

> A court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong.

286 U.S. at 114, 52 S.Ct. at 462.

I would affirm the judgment of the trial court in its entirety.

---

8. *George Thatcher Corporation v. Bullen,* 108 Utah 562, 162 P.2d 421 (1945); *Cason v. Glass Bottle Blowers Association,* 113 Cal.App.2d 263, 247 P.2d 931 (1952); 47 Am.Jur.2d Judgments § 1032.

9. *George Thatcher Corporation v. Bullen, supra,* n. 6; see also, *Utah C.V. Federal Credit Union v. Jenkins,* Utah, 528 P.2d 1187 (1974).

10. U.C.A., 1953, § 70A-4-404.

11. See 14 A.L.R.Fed. 309, § 5[a]; see also, 77 Moore's Federal Practice ¶ 60.26[4]; see also, *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932).

**1312**

HOWE, Justice (concurring and dissenting):

I concur in the opinion of Chief Justice Hall with the following observation. Neither in his opinion nor in the majority opinion is any recognition given to that part of Rule 60(b)(6) which specifically provides that if a judgment has been "satisfied, released, or discharged", that is a ground upon which the court may relieve a party from the judgment. Entirely aside from the fact that the plaintiffs here had filed a written Satisfaction of Judgment in the court below, the judgment debtor's insurer, Wausau, has paid or is obligated to pay the plaintiffs' insurer, State Farm, $4,347.71 on a subrogation claim handled through arbitration. This fact clearly provided the judgment debtor with grounds to have the judgment against it modified to the extent of that amount. On somewhat similar facts, a judgment was modified because of partial satisfaction thereof in *Sunderland v. City of Philadelphia*, 575 F.2d 1089 (3rd Cir.1978). There, the plaintiffs obtained a judgment against the defendants in the amount of $35,000 arising out of a gas explosion. After entry of judgment, defendants filed a motion to amend the judgment because one of them had paid $7,500 to the plaintiffs' insurer on account of the latter's subrogation claim against the defendants. The court held that the denial of the motion by the district court was an abuse of discretion and that the defendants were entitled to such relief modifying the judgment under Federal Rule 60(b)(5), which is the same as our Rule 60(b)(6).