EDUCATORS MUTUAL INSURANCE ASSOCIATION, Plaintiff and Appellant,

v.

ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, an Iowa corporation, Defendant and Appellee.

No. 930616.

Supreme Court of Utah.

March 1, 1995.

Todd S. Richardson, Salt Lake City, for plaintiff.

Robert C. Keller, Salt Lake City, for defendant.

RUSSON, Justice:

Educators Mutual Insurance Association (Educators) appeals the district court's order granting Allied Property and Casualty Insurance Company's (Allied) motion to dismiss Educators' complaint for failure to state a claim upon which relief can be granted pursuant to Utah Rule of Civil Procedure 12(b)(6). We affirm.

I. FACTS

On appeal from a motion to dismiss under Utah Rule of Civil Procedure 12(b)(6), we review only the facts alleged in the complaint. *Lowe v. Sorenson Research Co.*, 779 P.2d 668, 669 (Utah 1989). In so doing, we "accept the factual allegations in the com-

plaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff." *Prows v. State*, 822 P.2d 764, 766 (Utah 1991) (citing *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991)).

In two unrelated incidents in January 1990 and October 1992, two of Educators' insureds were involved in automobile accidents for which two of Allied's insureds were responsible. In both cases, the injured parties received substantial benefits pursuant to the health and accident policies they held with Educators. In addition to providing coverage for the insureds, the policies granted Educators subrogation rights to any monies obtained by way of settlement or recovery by the insureds against any responsible party.

Subsequent to the injured parties' receipt of benefits from Educators, Allied entered into settlement negotiations with the injured parties to resolve the indemnity obligations it owed on behalf of its insureds, the responsible parties in each accident. During the course of settlement negotiations, Allied received actual or constructive notice of Educators' subrogation claims with respect to each accident. Despite having received notice of Educators' subrogation rights, Allied proceeded to negotiate settlements with the injured parties, make settlement payments to them, and receive releases of all claims against Allied's insureds from them. Allied did not include Educators as co-payees on the drafts or obtain Educators' consent to the settlements.

Educators subsequently filed a complaint alleging that Allied's actions amounted to fraud. Allied responded by filing a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to rule 12(b)(6),[1] asserting that no action for fraud on a subrogation claim exists. Following a hearing, the district court entered an order granting Allied's motion and dismissing Educators' complaint.

Educators appeals, claiming that the trial court erred in granting Allied's motion and in dismissing its complaint for failure to state a claim upon which relief can be granted.

## II. STANDARD OF REVIEW

A motion to dismiss under Utah Rule of Civil Procedure 12(b)(6) is proper "only where the plaintiff or plaintiffs would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim." *Prows v. State*, 822 P.2d 764, 766 (Utah 1991); *accord Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990). Thus, we affirm the dismissal "only if it is apparent that as a matter of law, the plaintiff could not recover under the facts alleged." *Lowe v. Sorenson Research Co.*, 779 P.2d 668, 669 (Utah 1989). Because we consider only the legal sufficiency of the complaint, we grant the trial court's ruling no deference and review it for correctness. *See id.; accord Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985).

## III. ANALYSIS

### A. Subrogation Generally

■ Subrogation is an equitable doctrine that allows a person or entity which pays the loss or satisfies the claim of another under a legally cognizable obligation or interest to step into the shoes of the other person and assert that person's rights. *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.*, 418 F.Supp. 56, 58 (N.D.Tex.1976), *cited with approval in Board of Educ. of Jordan Sch. Dist. v. Hales*, 566 P.2d 1246, 1247 (Utah 1977); *see also Allstate Ins. Co. v. Ivie*, 606 P.2d 1197, 1202 (Utah 1980) (holding that "[s]ubrogation is a creature of equity, its purpose is to work out an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who, in equity and in good conscience, ought to pay it"); *accord Transamerica Ins. Co. v. Barnes*, 29 Utah 2d 101, 105, 505 P.2d 783, 786 (1972). Three equitable reasons are tra-

---

1. Utah Rule of Civil Procedure 12(b) provides: Every defense, in law or fact, to claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted[.]

ditionally advanced for permitting subrogation:

> (1) that the person who in good faith pays the debt or obligation of another has equitably purchased (quasi-contractually), or is at least entitled to, the obligation owed by the debtor or tortfeasor;  (2) that the wrongdoer (tortfeasor) is not entitled to a windfall release from his obligation simply because the injured party had the foresight to obtain insurance;  and (3) that public policy is served by allowing insurers to recover and thus reduce insurance rates generally.

*Stafford,* 418 F.Supp. at 58, *cited with approval in Hales,* 566 P.2d at 1247; *accord Ivie,* 606 P.2d at 1202.

However, "[s]ubrogation is not a matter of right but may be invoked only in those circumstances where justice demands its application, and the rights of the one seeking subrogation have a greater equity than the one who opposes him." *Barnes,* 29 Utah 2d at 105, 505 P.2d at 786 (citing *Beaver County v. Home Indem. Co.,* 88 Utah 1, 36–37, 52 P.2d 435, 450–51 (1935)). "Subrogation is not permitted where it will work any injustice to others." *Id.* "To entitle one to subrogation, the equities of one's case must be strong, as equity will, in general, relieve only those who could not have relieved themselves." *Id.* (citing *Ashton Jenkins Ins. Co. v. Layton Sugar Co.,* 85 Utah 333, 337, 39 P.2d 701, 703 (1935)).

### B.  Educators' Right to Bring a Subrogation Action

■ It is well settled that an insurer may bring a cause of action on behalf of its insured.  In fact, Utah Code Ann. § 31A–21–108 explicitly provides, "Subrogation actions may be brought by the insurer in the name of its insured."  Moreover, as far back as *State Farm Mutual Insurance Co. v. Farmers Insurance Exchange,* 22 Utah 2d 183, 184, 450 P.2d 458, 459 (1969), this court held that an injured party's insurer may bring a subrogation action against a tort-feasor's in-

surer for expenses paid to the injured party where notice of claim for reimbursement was given to the tort-feasor's insurer prior to settlement.  Additionally, in *Transamerica Insurance Co. v. Barnes,* this court established that a settlement between an injured party and a tort-feasor who has knowledge of the subrogation rights of the injured party's insurer does not destroy the subrogation claim of the injured party's insurer. *Barnes,* 29 Utah 2d at 106, 505 P.2d at 787; *accord Hill v. State Farm Mut. Auto. Ins. Co.,* 765 P.2d 864, 867 (Utah 1988).[2]

Furthermore, numerous other jurisdictions have held that an insurer's right of subrogation is not defeated when the tort-feasor settles with the insured without the consent of the insurer and with the knowledge of the insurer's payment and right of subrogation. *See, e.g., Bahn v. Shalev,* 125 A.2d 678, 679–80 (D.C.Ct.App.1956); *Cleaveland v. Chesapeake & Potomac Tel. Co.,* 225 Md. 47, 169 A.2d 446, 448 (1961); *Neuss, Hesslein & Co. v. 380 Canal St. Realty Corp.,* 9 Misc.2d 903, 168 N.Y.S.2d 579, 582–83 (N.Y.Sup.Ct.1957). Accordingly, in the case at bar, it is clear that Educators had a right to bring a cause of action in equity against Allied.

### C.  Educators' Fraud Action

■ However, rather than pursue its right to bring a cause of action in equity on its subrogation claim, Educators instead chose to proceed solely under a tort theory of fraud.  In support of this claim, Educators relies upon the following language from *Transamerica Insurance Co. v. Barnes:* "If the settlement were made with the knowledge, actual or constructive, of plaintiff's subrogation right, such settlement and release is a fraud on the insurer and will not affect the insurer's right of subrogation as against the tort-feasor or his insurance carrier." *Barnes,* 29 Utah 2d at 106, 505 P.2d at 787.

Educators' reliance on this language is misplaced for a number of reasons.  First, *Barnes* is plainly distinguishable from the present case because it involved an insurance

---

**2.** In such cases, this court recommended that payments from the tort-feasor's insurer meant to cover expenses already paid for by the injuerd party's insurer be issued in a draft made out jointly to the injured party and that party's insurer. *Barnes,* 29 Utah 2d at 106, 505 P.2d at 787; *accord Hill,* 765 P.2d at 867.  We note that this did not occur in the present case.

company that sued its own insured, not the tort-feasor's insurer. Thus, the *Barnes* ruling addressed only actions between an insurance company and its insured, not actions between an insurer-subrogee and the party ultimately responsible for an accident. Second, the statement is dictum. In *Barnes*, this court reversed and remanded, holding that the record was insufficient to determine whether the injured party or his insurer was entitled to monies paid by the tort-feasor's insurance company. Third, the use of the word "fraud" in *Barnes* was clearly not intended to create a new cause of action, but rather to simply serve as a description or analogy explaining why the practice so described should not and would not be allowed. This becomes apparent when the "fraud" language is examined in context of the whole case. Read in this context, it becomes evident that the importance of the court's point is simply that a "settlement ... made with the knowledge, actual or constructive, of [the injured's insurer's] subrogation right ... will not affect the insurer's right of subrogation as against the tort-feasor or his insurance carrier." *Id.* The essence of that statement was not the creation of a new cause of action in fraud, but rather a recognition that the insurer's right of subrogation, a right with specific, cognizable remedies that had already been determined in prior case law, could not be defeated by a settlement made between its insured and a tort-feasor's insurer who has knowledge of that subrogation right.[3]

▪▪▪ Under Utah law, to bring a claim sounding in fraud, a party must allege (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage. *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 800 (Utah 1991); *accord Mikkelson v. Quail Valley Realty*, 641 P.2d 124, 126 (Utah 1982); *Pace v. Parrish*, 122 Utah 141, 144–45, 247 P.2d 273, 274–75 (1952). Educators' complaint on its face plainly fails to allege these elements. In fact, it appears that Educators did not even attempt to do so. Educators' complaint simply alleges that (1) it notified Allied of its subrogation rights, (2) Allied consciously disregarded Educators' notice of subrogation rights and proceeded to negotiate and settle without taking any measures to protect Educators' subrogation interest, and (3) such actions constituted a fraud by Allied against Educators, entitling Educators to compensatory damages equal to the amount it paid for its insured's injuries, punitive damages, and attorney fees.

Because Educators' complaint did not properly allege the elements of fraud and no cause of action in fraud on a subrogation claim exists under Utah law, the trial court properly dismissed that complaint, which sounded solely in fraud, for failure to state a claim upon which relief could be granted.

---

3. This reading of *Barnes* also comports with the holdings of the cases upon which the *Barnes* court relied in making the statement in question. In *Davenport v. State Farm Mutual Automobile Insurance Co.*, 81 Nev. 361, 404 P.2d 10 (1965), the Nevada Supreme Court did not even address the issue of fraud but simply stated, as the *Barnes* court did, that a known subrogation right of the injured party's insurer may not be disregarded in a settlement between the injured party and the tort-feasor or the tort-feasor's insurer. *Id.* at 13. Likewise, in *Hospital Service Corp. v. Pennsylvania Insurance Co.*, 101 R.I. 708, 227 A.2d 105 (1967), the Rhode Island Supreme Court did not create a new cause of action in fraud, but merely likened the equitable cause of action in that case to fraud and held that "a release procured by a tort-feasor, who is aware that the insurer claims to be subrogated to the rights of its insured, will not constitute a defense to the insurer's action against the wrongdoer to enforce its rights of subrogation." *Id.* at 112. Nor did the Arkansas Supreme Court create a fraud cause of action in *Sentry Insurance Co. v. Stuart*, 246 Ark. 680, 439 S.W.2d 797 (1969), but instead held that "no act of the insured releasing the wrongdoer from liability can defeat the insurer's rights when a release is given without the knowledge or consent of the insurer, and when the wrongdoer has full knowledge of the insurer's right of subrogation under the contract." *Id.* at 799.

## IV. CONCLUSION

Accordingly, the trial court's dismissal of Educators Mutual Insurance Association's complaint, which improperly sounded in fraud, is affirmed.

ZIMMERMAN, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, Associate C.J., concurs in the result.