**Carrie M. CARTER, Plaintiff and Appellant,**

v.

**Raymond D. KINGSFORD and Transnational Insurance Company, Defendants and Respondents.**

**No. 14516.**

Supreme Court of Utah.

Dec. 1, 1976.

J. Keith Henderson, Ogden, for plaintiff and appellant.

D. Gary Christian, Salt Lake City, for defendants and respondents.

HENRIOD, Chief Justice:

Appeal from a summary judgment denying a petition to set aside a release of claims incident to a car accident. Affirmed, with costs to Kingsford.

On April 26, 1971, Mrs. Carter's and Mr. Kingsford's cars collided in an intersection, resulting in injuries to the former. Her doctor, *on the day of the event*, diagnosed her injuries as a "cervical contusion" or cervical strain, strain of the left shoulder and superficial abrasions. Next day she was hospitalized and stayed there until June 6, 1971,—about 5½ weeks. On July 14, 1971, she signed the release, after receiving $3,334.09, subject of this suit. Shortly thereafter Mrs. Carter noticed a recurrence of numbness in her arm. She was treated by her doctor until November, 1974, when she saw another doctor. She was admitted to the hospital again in January, 1975,—over four years after the accident, and about 3½ years after signing the release. During that period she was treated by her own physician and others as consultants, and finally by Dr. Van Hook, who found that *at that time* she had a cervical herniated disc, and during that same month she had surgery involving fusion of the C–5 and 6 discs.

This case seems to be controlled by *Reynolds v. Merrill*,[1] which both parties urge is dispositive here.

Plaintiff Carter says the instant case "is very similar to the *Reynolds* case." Defendant Kingsford says the facts in the *Reynolds* case "are extremely important to the disposition of the instant case," ob-

1. 23 Utah 2d 155, 460 P.2d 323 (1969).

viously meaning "dispositive" in favor of Kingsford's urgence that the release was binding and not subject to any claim of mutual mistake; the basis of the *Reynolds* case.

This author dissented in that case,[2] as did Justice Callister, but the law of that case was enunciated in *Reynolds* as reflected in the language penned by our learned colleague Mr. Justice Ellett where he opined that the trial judge in refusing to vacate the release failed to distinguish between "an unknown injury and unknown consequences of a known injury" where "the former can be the basis of a mutual mistake, while the latter would be only a mistake of opinion."

Irrespective of this author's belief and contention that there was no true mutual mistake in *Reynolds*, and that anyway, the release was all-inclusive, the language quoted above appears to be the law of this State relating to a release signed in accident cases.

Applying such pronouncement to the facts here, we believe and hold that the release was not voidable and could be only if they present a *genuine* issue of fact and we think that there was not such a real, *genuine* issue, and that Mrs. Carter's thesis is tenuous compensabilitywise.

In the *Reynolds* case the diagnosis was 1) "Traumatic bursitis of right shoulder,"[3] "*not disabled*," and 2) "Traumatic myositis posterior neck muscles."[4]

In the instant case the diagnosis was, at the time of the accident, "a cervical strain, strain of the left shoulder and superficial abrasions,"[5] according to Mrs. Carter's doctor, *who also said* that the x-rays and analysis as of 1971 *indicated a slight degen-*

*erative disc disease at C–5 and 6,* but that at that time "there was no reason for a prognosis of any necessary or possible surgical repair." Mrs. Carter must have considered the diagnosis, and significantly stated in her own affidavit that at the time of the release she was aware of the injury, believing it was merely a severe neck strain, but was unaware of the nature or extent of her injury.

We are of the opinion that the trial judge's memorandum decision was and is well taken and reflects the law espoused in *Reynolds*, as applied to the facts of this case when he says:

> There can be no question that after the accident she knew and was informed that she had an injury to her neck. . . . This is without a doubt a case in which a release has been given for a known neck injury, the future of which was speculative, and in the general belief that the plaintiff was recovering, but that the monies were paid for the risk of known recovery. The case is clearly distinguishable from *Reynolds v. Merrill,* 23 Utah 2d, 155, [, 460 P.2d 323,] where the injury was not noted and not considered in its true light at the time. . . . If a release is good at all this release must be recognized. . . . Unquestionably, from Dr. Jahsman's report to attorney Keith Henderson in the file, this is a "known injury where the result was not foreseeable" and settled on that basis. [R. 114–115]

There is nothing in the record, it would appear, that would reflect other than that at the time of the injury there were "unknown consequences of a known injury" such that there could not be an avoidance

---

2. Still considering that case to be a departure from equitable principles and the quality and quantum of proof traditionally required in such cases, and situations to which they apply, where the release covers both known and unknown physical conditions.

3. "Commonly understood as a painful inflammation of the shoulder or elbow." (Webster's Third International Dictionary).

4. Said to be "muscular discomfort or pain from infection or an *unknown* cause." (Webster's supra.).

5. Having to do with a cervical vertebra, nerve or artery. Of or relating to a neck. (Webster's, supra.).

of the release under the *Reynolds v. Merrill* rule.

WILKINS, J., concurs in result.

CROCKETT, Justice (concurring with comments):

At the time of the settlement both parties knew that the plaintiff had a serious injury to the cervical area of her back. She had been in the hospital for over five weeks under medical care with the use of the hospital's diagnostic facilities including the taking of the x-rays. There is no indication, and it is not claimed, that she was under any undue influence or pressure of any kind, when another five weeks later she entered into the agreement of settlement and signed the release for which she received the $3,334.09. It cannot reasonably and fairly be assumed otherwise than that she did so in awareness of the result of her examination and treatment in the hospital and her doctor's advice concerning her condition, including the fact that the x-rays showed "a slight degenerative disc disease" of her cervical vertebra.

It is a commonly known fact that there is considerable variation in the degree of recovery from serious injuries. Some do better than others. Where the parties know what the injury is, they should be free to agree to a settlement each bearing whatever risk may be involved in a better or worse recovery from the particular known injury. Once arrived at and signed, the parties should be bound thereby the same as on any other contract. It is presumed to be valid; and can be attacked and its effect overcome only if it can be shown by clear and convincing evidence [1] that there was a mutual mistake of fact,[2] i.e., that there was what can be regarded as a different injury, not then known to the parties, so that it was not their intent to include it in the settlement. I think this is in agreement with the decision of Justice Ellett in *Reynolds v. Merrill*, footnote one main opinion, the principle of which I think is applicable here and consistent with the decision of this Court in the instant case.

It is my opinion that this is a sound and necessary policy, not only because fairness to both parties demands it, but to the extent such settlements and releases may be set aside because things didn't turn out just as expected, they are rendered insecure; and therefore parties will be reluctant to enter into them. Whereas it should be the policy of the law to encourage final settlements of disputes and to avoid controversies and litigation.

ELLETT, Justice (dissenting):

This Court has often held that a Motion for Summary Judgment should only be granted where there are no disputed material issues of fact in the case. In *Dupler v. Yates* [1] we stated that:

> Rule 56 U.R.C.P. is not intended to provide a substitute for the regular trial of cases in which there are disputed issues of fact upon which the outcome of the litigation depends. And it should be invoked with caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material fact.

The parties believed at the time of settlement that the plaintiff had contusions to the cervical spine and settled for that injury. Actually the plaintiff had a herniated disc which she now asserts was caused by the accident and which was not known to her or the insurance company at the time of settlement.

A herniated disc is not the same injury as is a contusion to the cervical spine.

---

1. See *Greener v. Greener*, 116 Utah 571, 212 P.2d 194; *Jardine v. Archibald*, 3 Utah 2d 88, 279 P.2d 454; *Child v. Child*, 8 Utah 2d 261, 332 P.2d 981.

2. Or other ground for equity to avoid or reform a written instrument, See *Beehive State Bank v. Rosquist*, 26 Utah 2d 62, 484 P.2d 1188, and cases cited therein.

1. 10 Utah 2d 251, 351 P.2d 624, 636 (1960).

This may be illustrated as follows: Suppose the defendant's dog bites the plaintiff and both parties believe the bite is not serious and settle for $100. If infection sets in and the leg has to be amputated, the settlement cannot be set aside. However, if the dog, unknown to either party, was rabid at the time, and plaintiff later developed rabies, the settlement certainly should be set aside for the reason that the real injury was not known at the time of settlement and there was a mutual mistake of fact.

The instant case was brought because there was a material fact in dispute between the parties; to-wit: whether appellant had, in fact, settled for an unknown consequence of a known injury or whether she suffered from injuries which were unknown at the time of settlement. There is evidence to support either claim, and I believe the trial court erred in granting a summary judgment in the case.

The concurring opinion states:

It cannot reasonably and fairly be assumed otherwise than that she did so [settle her claim] in awareness of the result of her examination and treatment in the hospital and her doctor's advice concerning her condition, including the fact that the x-rays showed "a slight degenerative disc disease" of her cervical vertebra.

Obviously the meaning of the statement is that the author of the concurring opinion *assumes* that the appellant knew what the doctor knew. The fact is, as she states in her affidavit: "Dr. Johana had informed me that all x-rays taken of my neck and shoulders were normal." The trial court must have made the same erroneous assumption when it granted the summary judgment against the appellant.

My colleagues seem to rely on the case of *Reynolds v. Merrill* [2] which appears to be in point. There, the plaintiff was injured in a collision between two cars. He settled his cause of action with the insurance carrier and signed a release containing the following language:

The undersigned hereby declare(s) and represent(s) that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed, that the undersigned rely(ies) wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

In the *Reynolds* case, x-rays were taken and treatment received from a doctor. The plaintiff thought he had a strain of muscles and a recurrence of bursitis. It later turned out that he had a spinal fusion which he claimed was necessitated by his injuries. He, like the appellant in the instant matter, sought to set aside the settlement and to have a trial on the merits of the case. The trial judge in that case granted a summary judgment against the plaintiff therein. This Court reversed that judgment and in doing so, said:

In the instant case the plaintiff does not contend that he should have the release set aside if it is shown that he actually intended to settle for all injuries. He here is asking for a day in court to establish, if he can, that there was a mutual mistake of fact regarding the injury which actually was in existence but which was unknown to both him and the insurance adjuster.

We are not here concerned with the question of when the plaintiff's disc was herniated. He has alleged that it resulted from the accident. If he can prove it, and that at the time of signing the release neither party knew about it, he should have that privilege.

2. 23 Utah 2d 155, 460 P.2d 323 (1969).

The summary judgment granted by the lower court is reversed, and the case is remanded to the lower court for a trial on the issues presented by the pleadings. The appellant is awarded costs.

The instant matter seems identical to the *Reynolds* case, and in my opinion the ruling here should be the same as it was in that case.

I would reverse the summary judgment, remand the case for trial to determine if there was a mutual mistake of fact; and if there was, then for a trial on the merits of the case. I would award costs to the appellant.

MAUGHAN, J., concurs in the views expressed in the dissenting opinion of ELLETT, J.