Eugene P. **CAMPBELL, Plaintiff and Respondent,**

v.

**Pearl STAGG, Defendant and Appellant.**

**No. 15912.**

Supreme Court of Utah.

June 12, 1979.

Ray H. Ivie of Ivie & Young, Provo, for defendant and appellant.

Jackson B. Howard, Provo, for plaintiff and respondent.

MAUGHAN, Justice:

This case involves an action for damages arising out of an automobile accident in 1973. The district court held a release entered into between plaintiff and defendant was voidable, because of a mutual mistake of fact, and awarded plaintiff damages on his claim against defendant. Defendant asserts there was no mutual mistake of fact; and, in any event, the release is still in effect because defendant's insurer was not joined as an indispensable party. We affirm and award costs to plaintiff. All statutory references are to Utah Code Ann., 1953, as amended.

The collision giving rise to this litigation occurred near Price, Utah, on September 9, 1973. Plaintiff was taken by a police officer to Carbon Hospital and examined by Dr. Gorishek, who ordered X–rays and performed a clinical examination upon plaintiff. The doctor was at that time of the opinion the injuries to plaintiff were minor, consisting of bruises and cervical strain. Plaintiff also thought he was not seriously injured, and returned to work the following day.

On September 12, 1973, plaintiff telephoned LaVell Brown, an agent for State Farm Mutual Automobile Insurance Company (State Farm), defendant's insurer. Plaintiff represented to Brown he was not seriously injured, and Brown informed his superiors that plaintiff's injuries consisted only of "multiple bruises." On September 21, 1973, plaintiff signed a release which provided that State Farm would pay $850 for damage to plaintiff's car, $400 for pain and suffering, and amounts not to exceed a specified upper limit for medical costs and lost wages.

In December, plaintiff's condition deteriorated, and he was admitted to St. Marks Hospital in Salt Lake City. A neurologist diagnosed plaintiff's neck injury as a herniated cervical disc with compression of nerve roots C–5 and C–6. He was released from the hospital January 4, 1974, and notified State Farm in February of his decision to rescind the release agreement. The complaint was filed February 25, 1974, and defendant's answer setting up the release

agreement as an affirmative defense, was filed in March.

To relieve the increasing pain in his neck and arm, plaintiff later underwent surgery, which was for the most part unsuccessful. He has been partially disabled because of his injury since 1974.

On October 3, 1977, the first day of trial, defendant moved to vacate the trial setting because State Farm was not named as a party. Judge Edward Sheya denied the motion, heard the case without a jury, and took the matter under advisement. He subsequently died before rendering a decision, and the matter was reset for trial on February 23, 1978. The district court denied defendant's "Objection to Trial," which asserted State Farm was an indispensable party, and heard the case without a jury. From a judgment in favor of plaintiff, defendant appealed, claiming: (1) State Farm is an indispensable party to the action, and because all parties to the release are not before the court, the release as to defendant cannot be set aside; (2) there was no mutual mistake of fact between plaintiff and Brown; (3) plaintiff ratified the release agreement by his conduct after September 21, 1973; and (4) the district court incorrectly allowed interest on special damages under § 78–27–44. We address these issues in the order presented above.

Defendant argues since the release agreement names not only defendant, but also State Farm, State Farm must be named in an action to set the release aside. In support of this argument, defendant refers us to 12 C.J.S. Cancellation of Instruments § 52:

> The rules of equity with reference to parties control in a suit wherein plaintiff seeks to enforce equitable rights through the equitable remedy of cancellation or rescission. All persons whose rights, interest, or relations with or through the subject matter of the suit would be affected by the cancellation or rescission are proper and necessary parties in order

that they may have an opportunity to be heard; and unless they are made parties the court is precluded from rendering a judgment or decree of cancellation. Where such persons are not made parties originally, they may be brought in by amendment; but until the omission is corrected the court should not proceed further, even though no objection is made by any party litigant.

Additionally, defendant cites *Stone v. Salt Lake City*, 11 Utah 2d 196, 356 P.2d 631 (1960), in which this Court stated:

> One should be regarded as a necessary party to a law suit if he has rights or interests involved in the subject matter in such a way that his presence is essential to a full, fair and equitable determination of his rights and those of other parties to the suit, and necessary parties include the grantees of a deed, in an action in which the validity of such deed is under attack.

We do not disagree with the above statements of law, but we find them inapplicable to this situation.

State Farm has committed no act making it liable in tort to plaintiff, as has defendant. State Farm did, however, *contractually* bind itself with defendant, the insured, to compensate persons such as plaintiff in the event of a collision caused by defendant. State Farm's liability to plaintiff arises only secondarily, through its contractual arrangement with defendant, and the release agreement itself cannot alter State Farm's liability to defendant under the terms of contract between them.

In Utah, a plaintiff must direct his action against the actual tortfeasor, not the insurer.[1] The fact that plaintiff signed a release agreement which named the insurer as a releasee does not change the nature of the rights between plaintiff and the insurer; plaintiff has no direct cause of action against the insurer which he could release. Plaintiff's only cause of action lies against defendant, which is an action in tort. On

---

1. *Christensen v. Peterson*, 25 Utah 2d 411, 483 P.2d 447 (1971); *Young v. Barney*, 20 Utah 2d 108, 433 P.2d 846 (1967).

this basis, we distinguish *Pattison v. Highway Insurance Underwriters*, Tex.Civ.App., 278 S.W.2d 207 (1954), cited by defendant in support of her argument. In *Pattison*, plaintiffs alleged the insurer's agents fraudulently misrepresented the amount of coverage provided in the defendant's insurance policy, inducing plaintiffs to sign a release agreement. The court held plaintiffs could have the insurer joined as a party in view of plaintiffs allegations of torts committed by both defendant and the insurer. The court held: "We think the [trial court's] action in sustaining defendants' exceptions setting up that plaintiffs had plead[ed] tort actions which were improperly joined was wrong." Here, no tort by the insurer is alleged.

■ As stated in *Stone v. Salt Lake City*, supra, one is a necessary party if his interests or rights are involved in such a way that his "presence is essential to a full, fair and equitable determination of his rights and those of other parties to the suit," and that is not the situation in the case before us. Although the release was negotiated by the agent for State Farm on behalf of defendant, State Farm's presence as a party in the action to set aside the release is not essential to a determination of its rights, since State Farm's liability is governed solely by its contract with defendant. The execution and avoidance of the release are matters affecting defendant's direct liability to plaintiff as a tortfeasor, and do not require the presence of the insurer as a named party.

Defendant and plaintiff both rely on the same cases concerning the issue of whether the release should have been set aside because of a mutual mistake of fact. In *Reynolds v. Merrill*, 23 Utah 2d 155, 460 P.2d 323 (1969), this Court held an injured person may have a release set aside if there is a mutual mistake of fact regarding an injury which actually was in existence but unknown to the parties when the release was signed. The court distinguished an *unknown* injury from *unknown* consequences of a *known injury*, noting that "[t]he former can be the basis of a mutual mistake of

fact, while the latter would be only a mistake of opinion." The court quoted from *Ranta v. Rake*, 91 Idaho 376, 421 P.2d 747, 751 (1967), in which the Idaho Supreme Court declared:

The majority and the more modern view, while recognizing the policy of encouraging out-of-court settlements of personal injury claims, permits a releasor to avoid a release where unknown injuries existed at the time the release was executed though the release invariably is broad enough to encompass unforeseen injuries and though the release was honestly obtained without fraud, overreaching or undue influence on the part of the releasee.

In 1976, we reaffirmed the Reynolds approach in *Carter v. Kingsford*, Utah, 557 P.2d 1005 (1976). In *Carter*, plaintiff's injuries from an automobile accident were diagnosed by her doctor on the day of the accident as "cervical contusion" or cervical strain. She was hospitalized the next day and remained there for five and one-half weeks. X–rays taken during this time indicated plaintiff had a "slight degenerative disc disease at C–5 and 6." Three months after the accident, she signed a release. Three and one-half years after signing the release, plaintiff was hospitalized for surgery involving fusion of the C–5 and C–6 discs. The denial of the petition to set aside the release was affirmed by a divided court, the majority holding that this was a situation involving unknown consequences of a known injury.

In *Reynolds*, the diagnosis at the time of the signing of the release was "traumatic bursitis of right shoulder," and "[t]raumatic myositis [of] posterior neck muscles." The doctor reported plaintiff would be able to continue working, which plaintiff did. A few months later plaintiff was referred to an orthopedic specialist who diagnosed plaintiff's injury as a herniated disc, and surgery fusing the C–5 and C–6 discs was thereafter performed.

In the case at hand the following facts are pertinent: (1) immediately following the accident, the examining doctor charac-

terized plaintiff's injuries as minor, consisting of cervical strain and bruises; (2) the doctor testified he thought the condition would be cured in a month or two, and had no reason to suspect a herniated disc at the C–5 level; (3) the doctor told plaintiff on September 9 and September 19, 1973, that plaintiff "had a soft tissue injury and probably a strain that would eventually clear up by itself"; (4) plaintiff thought he was not seriously injured after being examined on September 9, and returned to work the next day; (5) State Farm's agent, LaVell Brown, also thought plaintiff had sustained only minor injuries, and reported to his superiors that plaintiff had only "multiple bruises"; (6) both plaintiff and LaVell Brown indicated the release agreement was based on the understanding of minor injuries to plaintiff that would be cured within a short period of time; (7) plaintiff's injuries in fact consisted of a herniated disc which evolved into a "thoracic outlet syndrome," a permanent partial disability affecting certain nerves in the spine and shoulder; (8) the injury actually sustained by plaintiff was of a nature much more serious than a cervical strain or simple stretching of the neck muscles; the original diagnosis of Dr. Gorishek. The neurologist who first examined plaintiff in December 1973, testified, "I'd say that any herniated disc, thoracic outlet syndrome that may result from a hyperextension injury would initially present itself as cervical strain and would be almost impossible to distinguish one from the other unless one were a neurologist and examined the patient."

■ The above circumstances distinguish this case from *Carter v. Kingsford.* Here, unlike *Carter*, plaintiff and Brown entered into the release agreement under the assumption, based on a physician's statements, that the injuries were minor, consisting of sore neck muscles. Unlike *Carter*, plaintiff was not hospitalized for a lengthy period of time before signing the agreement, and X–ray examinations indicated no

degenerative conditions concerning plaintiff's cervical discs. Here, plaintiff felt well enough to continue working after the accident and at the time the release agreement was signed. Neither he nor the agent had reason to suspect the damage which actually had occurred to the spinal disc and the nerve groups in the spine and shoulder. The district court correctly held the release agreement was entered into based upon a mutual mistake of fact, and was voidable.

Defendant next asserts plaintiff ratified the release agreement by his conduct after September 21, 1973, the date the release was signed. The trial court found otherwise, and we agree. When plaintiff notified defendant and State Farm on February 14, 1974, of his intent to rescind the release agreement, he tendered a check for $1,250, an estimate of the amount of money paid by State Farm pursuant to the release agreement. At this same time, plaintiff accepted and negotiated several drafts from State Farm for medical expenses, although none were received after the complaint was filed on February 25, 1975.

The law on ratification of a release is generally stated as follows:

> The fundamental test of ratification by conduct is whether the releasor, with full knowledge of material facts entitling him to rescind, has engaged in some unequivocal conduct giving rise to an inference that he intended his conduct to amount to a ratification.[2]

■ Defendant contends plaintiff's acceptance of drafts at approximately the same time the letter of February 14, 1974, was mailed to defendant indicates unequivocal conduct that plaintiff intended to ratify the release. The trial court found otherwise on credible evidence. It is apparent from the record that plaintiff's condition remained somewhat stable until December or January, 1974, after which time he experienced increasing degrees of pain. Plaintiff did not have knowledge of the true nature of his condition until his hospitaliza-

**2.** *Union Pacific Railroad Co. v. Zimmer,* 87 Cal. App.2d 524, 197 P.2d 363 (1948); *Wells v. Mix,* 266 Or. 188, 512 P.2d 788 (1973).

tion ending January 4, 1974. The letter of February 14 and the tender of $1,250 at that time refute defendant's assertions that plaintiff engaged in unequivocal conduct indicating his intent to ratify the agreement despite knowledge of the serious nature of his injury.

Finally, defendant argues the district court erred when it allowed interest at eight percent on plaintiff's special damages pursuant to § 78–27–44, which became effective May 13, 1975. This section allows interest on special damages to be calculated from the date of the occurrence of the act giving rise to the cause of action. The section directs:

> . . . it shall be the duty of the court, in entering judgment for plaintiff in that action, to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on that amount calculated at 8% per annum from the date of the occurrence of the act giving rise to the cause of action to the date of entering the judgment, and to include it in that judgment.

Defendant points out that the accident giving rise to the cause of action occurred on September 9, 1973, and the court cannot award interest retroactively for the period from that day until the effective date of the statute.[3] In *In re Ingraham's Estate*, 106 Utah 337, 148 P.2d 340 (1944), this Court held, "legislative enactments operate prospectively rather than retrospectively, unless expressly declared otherwise," and this general rule has been reaffirmed on several occasions.[4] In *In re Ingraham's Estate*, however, this Court acknowledged a distinction between an enactment making substantive changes and one making procedural changes, and in *Petty v. Clark, supra*, note 4, this Court held the general rule did not apply to an enactment making a procedural change and not affecting substantive rights. Thus we have recognized the general rule to be inapplicable to certain enact-

ments, and plaintiff urges us to make such an exception now because § 78–27–44 does not affect substantive rights of the parties, but is simply a procedural directive to the court. Plaintiff cites *Benson v. Blair*, Okl., 515 P.2d 1363 (1973), in support of this argument, in which a similar enactment was designated procedural, and therefore exempt from the rule that a statute will not ordinarily be construed to operate retroactively.

However, we see no need to resort to the application of distinguishing labels in construing § 78–27–44. We do not view the statute as operating retroactively. The statute simply directs the court to add interest to the amount of damages found by the jury or the court. The statute is prospective in effect, since it applies to judgments rendered after the effective date of the act; it does not clearly express any retroactive effect to judgments entered *before* its effective date, and therefore has no such effect. The fact that the time from which interest should be calculated predates the effective date of the statute does not cause the statute itself to operate retroactively. Plaintiff's right to interest in this case was dependent upon the law in effect at the time the judgment was entered, which occurred on May 26, 1978. On that day, § 78–27–44 was in effect, and its terms govern the time period for which plaintiff may recover interest.

Additionally, we note that had the legislature intended the period of time for interest computation to begin in any case no sooner than the effective date of the statute, it surely could have so provided. Instead, it explicitly directed all (future) judgments to add interest computed from the time of the act giving rise to the accident. In addressing a similar situation where the enactment allowed interest from the date of the commencement of the action, the Rhode Island Supreme Court stated:

---

**3.** Utah Code Ann., § 68–3–3 provides: No part of these revised statutes is retroactive, unless expressly so declared.

**4.** *McCarrey v. Utah State Teachers' Retirement Board*, 111 Utah 251, 177 P.2d 725 (1947); *Union Pacific Railroad Co. v. Trustees, Inc.*, 8 Utah 2d 101, 329 P.2d 398 (1958); *Petty v. Clark*, 113 Utah 205, 192 P.2d 589 (1948).

We think the language of the statute clearly indicates that the legislature was concerned solely with the time when the damages were ascertained by decision or verdict and not at all with reference to the commencement of the action.

\* \* \* \* \* \*

For this reason we construe the statute as intending to become operative in any case where a decision is made or verdict rendered after its enactment irrespective of the time when the action was commenced.[5]

Similarly, we believe the legislative intent regarding this statute to be that the date of the act giving rise to the action is in all cases the date used for computing the period of interest.

CROCKETT, C. J., and WILKINS and HALL, JJ., concur.

STEWART, J., concurs in result.

---

5. *Foster v. Quigley*, 94 R.I. 217, 179 A.2d 494 (1962).