STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Appellant,

v.

NORTHWESTERN NATIONAL INSURANCE COMPANY, Defendant and Appellee.

No. 940546.

Supreme Court of Utah.

Feb. 28, 1996.

Ray Phillips Ivie, Jeffery C. Peatross, David N. Mortensen, Provo, for plaintiff.

S. Baird Morgan, Salt Lake City, for defendant.

DURHAM, Justice:

State Farm Mutual Automobile Insurance Company (State Farm) appeals the trial court's grant of summary judgment in favor of Northwestern National Insurance Company (Northwestern). State Farm contends that the trial court erred in ruling that State Farm did not have a valid equitable subrogation claim against Northwestern for settlement monies State Farm paid after investigating an accident which it claims should have been primarily covered by a Northwestern policy. We reverse.

Because we are reviewing a grant of summary judgment, we "view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993). We set forth the facts in the case accordingly.

This action arises from an automobile accident involving Reed W. Dalton, an employee of Dave Marshall dba Dave's Texaco (Dave's Texaco), which resulted in personal injuries to the driver of the other vehicle and property damage to both vehicles. At the time of the accident, Dalton was driving a borrowed car which belonged to his supervisor, Dan Puffer. State Farm, the insurance carrier for Puffer's personal vehicle, initially denied coverage on the ground that Dalton was using the car for business purposes and therefore the accident fell under the policy's exclusion for claims arising from the use of the vehicle in a car business.[1] Northwestern,

1. State Farm's policy with Puffer provided: There is no coverage:

the insurance carrier for Dave's Texaco, also denied coverage, contending that Dalton was not acting within the course and scope of his employment when the accident occurred.[2] After Northwestern refused coverage, State Farm, acting in the interest of its insured, investigated and settled all damage claims in the amount of approximately $18,700. State Farm then brought this action against Northwestern, arguing that Northwestern was obligated to cover the claims under its policy with Dave's Texaco. State Farm contends that under the theories of subrogation, indemnification, or unjust enrichment, Northwestern must reimburse it for the settlement amount.

Northwestern moved for summary judgment, arguing that Utah law does not allow an insurance company to pay a settlement and then institute an action against another insurance company for reimbursement. The trial court granted Northwestern's motion, stating, in effect, that State Farm cannot pay a claim not covered by its policy and then sue for reimbursement.

■ Before reaching the merits of this action, we note that summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *K & T, Inc. v. Koroulis*, 888 P.2d 623, 626–27 (Utah 1994). Because summary judgment presents a question of law, we accord no deference to the trial court's determination of the issues presented. *Higgins*, 855 P.2d at 235. "We determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact." *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989).

■ We first address State Farm's argument that it has a valid claim for subrogation. "Subrogation is an equitable doctrine that allows a person or entity which pays the loss or satisfies the claim of another under a legally cognizable obligation or interest to step into the shoes of the other person and assert that person's rights." *Educators Mut. Ins. Assoc. v. Allied Property & Casualty Ins. Co.*, 890 P.2d 1029, 1030 (Utah 1995). The right to subrogation does not depend on contractual relationships, as its purpose is to "work out an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who, in equity and in good conscience, ought to pay it." *Allstate Ins. Co. v. Ivie*, 606 P.2d 1197, 1202 (Utah 1980); *see also Wasatch Bank of Pleasant Grove v. Surety Ins. Co.*, 703 P.2d 298, 300 (Utah 1985) ("As an equitable doctrine, subrogation is not dependent on contractual rights and obligations.").

■ Utah law clearly recognizes an insurer's right to bring a subrogation action on behalf of its insured against a tortfeasor. *See Lima v. Chambers*, 657 P.2d 279, 281 (Utah 1982); *Transamerica Ins. Co. v. Barnes*, 29 Utah 2d 101, 505 P.2d 783, 786 (1972); *see also* Utah Code Ann. § 31A–21–108 ("Subrogation actions may be brought by the insurer in the name of its insured."). More significantly, we have extended this principle to an action by an insurer against a second insurance company which is primarily liable to defend or pay any claims on behalf of its insured but which has denied coverage. *National Farmers Union Property & Casualty Co. v. Farmers Ins. Group*, 14 Utah 2d 89, 377 P.2d 786, 787–88 (1963). In *National Farmers*, an automobile owned by a car salesman but temporarily loaned to a customer caused damage when it rolled into a building. The insurer for the car salesman denied coverage, claiming that the accident arose out of the use of the automobile in an "automobile business." The insurance company that provided coverage for the customer's vehicle undertook to defend all claims and prevailed in the action. It then sued the other insurance company for subrogation of the costs and attorney fees. *Id.* at 786–87.

---

1. While any vehicle insured under this section is:

...;

B. being repaired, serviced, or used by any person employed or engaged in any way in a car business.

2. Northwestern claims that its investigation revealed that Dalton had not started his shift when the accident occurred and/or that he was obtaining a part for a personal vehicle rather than for a customer's vehicle.

The court held that "the defendant, being the primary insurance carrier, was the insurer ultimately liable to pay a judgment against [the insured], had one been obtained, and therefore was obligated to defend him in the first instance." *Id.* at 788. Thus, even though no judgment or settlement amount was being sought, this court allowed the plaintiff insurance company to obtain reimbursement for the costs and attorney fees which "in good conscience" should have been paid by the defendant insurance company. *Id.*

■ However, before a court will grant relief, a party must meet the following requirements: (1) There must be a debt or obligation for which the subrogee was not primarily liable; (2) the subrogee must have made payment to protect his own rights or interest; (3) the subrogee must not have acted merely as a volunteer; and (4) the entire debt must have been paid. *Cook v. Cook,* 110 Utah 406, 174 P.2d 434, 436 (1946). Furthermore, subrogation must not work any injustice to the rights of others. *Educators Mutual,* 890 P.2d at 1031. It is undisputed that State Farm has met the first and fourth elements by paying a debt in full which State Farm alleges was primarily owned by Northwestern. However, the determination of whether State Farm paid the settlement amount in protection of its own rights or interest, not as a volunteer, requires closer examination.

■ Northwestern contends that since State Farm paid the claims even though it believed that its policy did not cover Dalton's accident, it acted as a "mere volunteer," not under any "legally cognizable obligation." *See Commercial Union Ins. Co. v. Postin,* 610 P.2d 984, 987 (Wyo.1980) ("[I]nsurance company will be regarded as a volunteer when it purports to pay under its policy but where—in fact—the payment is made for harm that was not covered."). We find this reasoning unpersuasive. We think the better position, adopted by the Tenth Circuit, is that "[a] payment is not voluntary if it is made with a reasonable or good faith belief in an obligation or personal interest in making that payment." *Weir v. Federal Ins. Co.,* 811 F.2d 1387, 1395 (10th Cir.1987) (citing 73 Am.Jur.2d *Subrogation* § 25 (1974)). This standard is met when an insurer has acted "in good faith to discharge a disputed obligation ... [even] if it is ultimately determined that its policy did not apply." 73 Am.Jur.2d *Subrogation* § 25 (1974); *see also Employers Mut. Liab. Ins. Co. v. Pacific Indem. Co.,* 167 Cal.App.2d 369, 334 P.2d 658, 662 (1959) (holding that plaintiff insurance company had legal interest arising "from the fact that there was a dispute between it and defendant as to which policy, plaintiff's or defendant's, covered the accident.").

■ Similar to the circumstances in *Employers Mutual,* a dispute exists between State Farm and Northwestern as to which policy covers Dalton's accident. If Northwestern's allegation that Dalton was not acting in the course and scope of his employment is correct, then the vehicle was not being used in a "car business" and State Farm would be obligated to cover the accident under its policy with Puffer. Thus, State Farm did have a legal interest of its own to protect by investigating and settling the claim and therefore was not a volunteer.

This conclusion also encourages early settlement of claims. The *Weir* court recognized:

The effect of preventing an insurer from bringing a subrogation action whenever an insurer reaches a settlement after initially challenging a claim would be to deter either settlements or investigations by insurers.... The requirement that an insurer have a reasonable or good faith belief in an obligation rather than an objective showing that such an obligation exists encourages prompt settlement of claims.

*Weir,* 811 F.2d at 1395 n. 6. If State Farm had followed Northwestern's course of conduct, Dalton would have been forced to rely on his own resources, even though premiums had been paid to protect against loss from such an accident. Instead, State Farm, in good faith and in the best interest of its insured, negotiated a settlement before any suit and then brought this action to determine the accuracy of defendant's claim of noncoverage. We find no merit in North-

western's argument that State Farm should be foreclosed from bringing a subrogation action because State Farm disputed coverage under its policy with Puffer.[3] Therefore, since we find that State Farm was not acting as a volunteer but was acting to protect its interest and because State Farm's subrogation claims against Northwestern will not work any injustice to the rights of others, State Farm has a valid claim for subrogation against Northwestern.

 Northwestern's final contention is that before investigating and making any settlement payment, State Farm should have brought an action for declaratory relief to determine which insurance company had coverage of Dalton's accident. Specifically, Northwestern cites *Educators Mutual,* where we stated, " 'To entitle one to subrogation, the equities of one's case must be strong, as equity will, in general, relieve only those who could not have relieved themselves.' " 890 P.2d at 1031 (quoting *Barnes,* 505 P.2d at 786). However, we do not believe that this maxim extends to the failure to institute a declaratory action in these circumstances. Taken in context, this statement merely refers to those cases where a party has, for example, failed to give adequate notice to, or failed to make a request for reimbursement from, another insurance company. *See Barnes,* 505 P.2d at 787.

Moreover, the simple fact that a declaratory action may have been available to State Farm does not "oust the equity court of jurisdiction; the question to be determined is whether the remedy at law compares favorably with the remedy afforded by the equity court." 27 Am.Jur.2d *Equity* § 99 (1966)

(footnote omitted). Forcing an insurance company, doubtful about coverage, to pursue a declaratory action before addressing a claimant's needs would be counter to the policy of supporting early settlements and prompt payments to insured persons and injured parties. Indeed, Northwestern's position would leave innocent victims without adequate protection, subject to uncertainties regarding payment for their injuries, and could require them to undertake legal action to secure payments. And in those instances where third parties are involved, the insured may possibly be subjected to multiple actions while the insurers battle in court.[4] The better policy is to protect individuals first and allow adjudication of coverage later.

Of course, this decision does not preclude any affirmative defenses, such as lack of notice, that Northwestern may assert at trial. Moreover, Northwestern still has the opportunity to show that its policy with Dave's Texaco did not, in fact, cover Dalton's accident.

Because we hold that State Farm has a valid cause of action arising under equitable subrogation, we do not reach its alternative theories of indemnification and unjust enrichment.

Reversed and remanded.

ZIMMERMAN, C.J., STEWART, A.C.J., HOWE and RUSSON, JJ., concur.

---

3. State Farm also argues that it had a statutory obligation to pay the settlement after Northwestern denied coverage. Utah Code Ann. § 31A–22–303(2)(c) provides:

> A policy containing motor vehicle liability coverage under Subsection 31A–22–302(1)(a) may:
> . . .;
> (c) if the policy is issued to a person other than a motor vehicle business, limit the coverage afforded to a motor vehicle business or its officers, agents, or employees to the minimum limits under Section 31A–22–304, and to those instances *when there is no other valid and collectible insurance* with at least those limits, whether the other insurance is primary, excess, or contingent.

(Emphasis added.)

State Farm contends that this language compelled it to provide at least minimal coverage once Northwestern denied coverage, which resulted in there being "no other valid and collectible insurance." However, since we find that State Farm was not a volunteer, we need not address this argument.

4. In *Beck v. Farmers Insurance Exchange,* 701 P.2d 795, 799 (Utah 1985), we stated that in third-party contexts, an insurer has a fiduciary obligation to its insured to protect the insured's interests as zealously as it would its own.