2003 UT App 444

**Davis COUNTY, Plaintiff and Appellant,**

v.

**James M. JENSEN and Progressive Northwestern Insurance Co., Defendants and Appellees.**

No. 20030174–CA.

Court of Appeals of Utah.

Dec. 26, 2003.

Trent J. Waddoups, Carr & Waddoups, Salt Lake City, for Appellant.

Kristin A. Van Orman, James D. Franckowiak, and Joseph J. Joyce, Strong & Hanni, Salt Lake City, for Appellees.

Before JACKSON, P.J., BILLINGS, Associate Presiding Judge, and GREENWOOD, J.

OPINION

BILLINGS, Associate Presiding Judge:

¶1 Davis County appeals the district court's order granting summary judgment in favor of Progressive Northwestern Insurance Company. We affirm.

BACKGROUND

¶2 On June 20, 1998, James Jensen led police on a high-speed automobile chase. During the pursuit, Jensen, driving southbound on Interstate 15, attempted to cross the median into oncoming northbound traffic. Worried for the safety of other drivers, Sergeant Gleave of the Davis County Sheriff's Office maneuvered his cruiser along the driver-side of Jensen's vehicle, effectively blocking Jensen's intended path into the opposing

traffic flow. Unfazed, Jensen continued toward the median until his vehicle impacted the passenger side of Sergeant Gleave's cruiser. Jensen's attempts to push the heavier cruiser out of the way proved unsuccessful, and Sergeant Gleave began pushing Jensen's car toward the right shoulder of the southbound lane. At this point, Jensen abruptly disengaged. The sudden lack of resistance caused Sergeant Gleave to lose control of his cruiser and collide with a semi-trailer truck. The cruiser was deemed a total loss by insurance adjusters. Jensen later pleaded guilty to charges of aggravated assault, criminal mischief, and failure to stop at the command of a police officer.

¶ 3 At the time of the incident, Jensen was covered as a permissive user under an automobile insurance policy (the Policy) with Progressive Northwestern Insurance Company (Progressive). Davis County (the County)[1] filed a claim with Progressive for damages to the police cruiser. Progressive determined that Jensen's conduct was intentional, not accidental, and therefore was not covered under the Policy.[2]

¶ 4 After Progressive denied the claim, the County filed a negligence suit against Jensen and Progressive seeking to recover damages. Because Progressive believed Jensen's intentional criminal conduct excluded him from coverage under the Policy, Progressive did not provide a defense for Jensen. When Jensen failed to provide his own defense, the trial court entered a default judgment against him in the amount of $17,209.88.

¶ 5 Thereafter, both Progressive and the County filed motions for summary judgment. Progressive argued it was entitled to summary judgment because the County had no standing to sue Progressive and because Jensen's intentional conduct was outside the scope of coverage, relieving Progressive of

any duty to indemnify or defend Jensen. The County argued it was entitled to judgment as a matter of law because the default judgment against Jensen conclusively established the factual allegations of negligence in the complaint, leaving Jensen's conduct squarely within the scope of coverage. Hence, the County argued that both the fact and the amount of Progressive's liability were conclusively established. The trial court denied the County's motion for summary judgment and granted Progressive's motion for summary judgment after concluding that Progressive had no duty to indemnify or defend because Jensen's conduct placed him outside the scope of coverage under the Policy. The County appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 6 The County argues the district court erred in granting summary judgment to Progressive and denying the County judgment as a matter of law. "Summary judgment is proper when there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 14, 56 P.3d 524 (quotations and citations omitted). "When reviewing the trial court's order granting [Progressive's] summary judgment motion, we view the facts and reasonable factual inferences in the light most favorable to [the County], the nonmoving party." *Id.* We review the order granting summary judgment for correctness, according no deference to the district court's legal conclusions. *Id.*

## ANALYSIS

■ ¶ 7 The County argues the trial court erred in granting Progressive judgment as a matter of law. We disagree but affirm on the alternate ground of standing.[3]

1. The County's brief indicates that Utah Association of Counties Insurance Mutual is the County's insurer and the real party in interest in this case.

2. The Policy defined an "accident" as "a sudden, unexpected, and unintended occurrence." The Policy also contained an intentional acts exclusion clause that excluded coverage for damages

caused "by an intentional act of an insured person[.]"

3. "It is well settled that an appellate court may affirm the judgment appealed from 'if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action....' " *Bailey v.*

■ ¶ 8 Progressive argued below and now contends on appeal that the County lacks standing to bring this direct action against Progressive.[4] We agree with Progressive.

¶ 9 The County relies on *State Farm Mutual Automobile Insurance Co. v. Northwestern National Insurance Co.*, 912 P.2d 983 (Utah 1996), for the proposition that one insurer may bring a subrogation action against a second insurer. In *State Farm Mutual Automobile Insurance Co.*, our supreme court noted:

> Utah law clearly recognizes an insurer's right to bring a subrogation action on behalf of its insured against a tortfeasor.... More significantly, we have extended this principle to an action by an insurer against a second insurance company which is primarily liable to defend or pay any claims on behalf of its insured but which has denied coverage.

*Id.* at 985. We conclude the County has read this language too broadly.

¶ 10 The plaintiff in *State Farm Mutual Automobile Insurance Co.* filed suit following an automobile accident involving Dalton, an employee of Dave's Texaco. *See id.* at 984. The accident resulted in personal injuries to the plaintiff and property damage to both the plaintiff's vehicle and the one Dalton was driving. *See id.* At the time of the accident, Dalton was driving a vehicle he had borrowed from Puffer, his supervisor at Dave's Texaco. *See id.* Puffer carried an automobile insurance policy with State Farm, and Dalton was covered under that policy as a permissive user of Puffer's vehicle. *See id.* Northwestern National insured Dave's Texaco and, due to his status as an employee, Dalton was also covered under that policy. *See id.* Hence, Dalton's claims of coverage under

both policies arose from contractual relationships between the insurers and the insured. *See id.* For reasons immaterial here, both State Farm and Northwestern denied Dalton coverage. *See id.* at 984–85. However, State Farm, acting to protect its insured, ultimately investigated and settled all claims. *See id.* at 985. Thereafter, State Farm sued Northwestern on the equitable grounds of subrogation, indemnification, and unjust enrichment, arguing Northwestern was obligated to pay the claims. *See id.* On these facts, the supreme court could "find no merit in Northwestern's argument that State Farm should be foreclosed from bringing a subrogation action because State Farm disputed coverage under its policy with Puffer." *Id.* at 986–87. Thus, the supreme court held that where two insurers, each having separate contractual obligations to cover the same tortfeasor, are in disagreement as to which insurer is primarily liable, the insurer that pays the claim to protect its insured may bring an equitable subrogation action against the second insurer.[5] *See id.; see also National Farmers Union Prop. & Cas. Co. v. Farmers Ins. Group*, 14 Utah 2d 89, 377 P.2d 786, 787 (1963) (allowing one insurer to bring a subrogation action against a second insurer to determine primary liability in an accident caused by a person that both companies had contracted to insure). The County's position finds no support in this holding because the County had no contractual relationship with Progressive or with Jensen and, therefore, no equitable right to subrogation against Progressive under the Policy.

¶ 11 Other Utah case law is in direct opposition to the County's claim of standing. For example, in *Campbell v. Stagg*, 596 P.2d 1037 (Utah 1979), our supreme court held that an injured party has no direct cause of action in

---

*Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (citation omitted).

4. In a prior motion for summary judgment, which the trial court denied, Progressive argued (thereby preserving the argument for appeal) that the County lacked standing to bring its claims against Progressive.

5. The supreme court cautioned that

> before a court will grant relief, a party must meet the following requirements: (1) There

must be a debt or obligation for which the subrogee was not primarily liable; (2) the subrogee must have made payment to protect his own rights or interest; (3) the subrogee must not have acted merely as a volunteer; and (4) the entire debt must have been paid.... Furthermore, subrogation must not work any injustice to the rights of others.

*State Farm Mut. Auto. Ins. Co. v. Northwestern Nat'l Ins. Co.*, 912 P.2d 983, 986 (Utah 1996).

contract against a tortfeasor's insurer because the insurer's liability to the injured party "arises only secondarily, through its contractual arrangement with the [tortfeasor]." *Id.* at 1039. In the context of an action for declaratory judgment, the supreme court in *Utah Farm Bureau Insurance Co. v. Chugg*, 6 Utah 2d 399, 315 P.2d 277 (1957), held that "one who claims to be damaged by the [tortious] act of another" is not "a proper party to an action by the insurer of the [tortfeasor] under a public liability policy, whereby a declaratory judgment is sought declaring the legal effects of the terms of such policy." *Id.* at 281. In fact, the supreme court has "consistently held ... that [a tortfeasor's] insurer [may] not be joined with the tort-feasor unless [such was] required by statute." *Christensen v. Peterson*, 25 Utah 2d 411, 483 P.2d 447, 448 (1971).

¶ 12 Some jurisdictions have adopted so-called "direct action statutes," allowing an injured party to bring direct action against a tortfeasor's insurer. *See* 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d. § 104:13 (1997) (citing *Dewalt v. State Farm Mut. Auto. Ins. Co.*, 99 F.2d 846 (8th Cir. 1938); *Jackson v. State Farm Mut. Auto. Ins. Co.*, 23 So.2d 765 (La.Ct.App.1945), *rev'd on other grounds*, 211 La. 19, 29 So.2d 177 (1946); *Thrasher v. United States Liab. Ins. Co.*, 19 N.Y.2d 159, 278 N.Y.S.2d 793, 225 N.E.2d 503 (1967); *Fehr v. General Accident Fire & Life Assurance Corp.*, 246 Wis. 228, 16 N.W.2d 787 (1944)).

■ ¶ 13 However, Utah has not adopted this rule. Instead, Utah adheres to the "general rule, [that] in the absence of a contractual provision or a statute or ordinance to the contrary, ... the absence of privity of contract between the [injured party] and the [tortfeasor's] insurer bars a direct action by the [injured party] against the [insurer]" in automobile insurance cases. *Id.* § 104:2 (footnotes omitted); *see also Campbell*, 596 P.2d at 1039 ("In Utah, a plaintiff must direct

his action against the actual tortfeasor, not the insurer.").

¶ 14 At least two policy justifications are provided in Utah case law for not adopting a direct action rule in Utah. First, "the presence of an insurer as a party defendant [with the tortfeasor] might have the same effect upon the jury as ... a liability policy," *Christensen*, 483 P.2d at 448, namely that the jury may improperly employ considerations of insurance, as evidenced by the presence of an insurer in the litigation, to decide the merits of a case. *See Young v. Barney*, 20 Utah 2d 108, 433 P.2d 846, 848 (1967) ("The understanding has always been that it [i]s prejudicial error to deliberately inject insurance [information] into ... a trial."). Second, "[i]t is not the policy of the law to encourage litigation." *Ammerman v. Farmers Ins. Exch.*, 19 Utah 2d 261, 430 P.2d 576, 578 (1967).

¶ 15 Further, the County lacks standing to bring an action in tort against Progressive because Progressive "has committed no act making it liable in tort to [the County]." *Campbell*, 596 P.2d at 1039. Indeed, the County does not allege that Progressive committed tortious acts against the County.[6] The County's only cause of action in tort lies against Jensen, *see id.*, and the County has already obtained a default judgment against him.

¶ 16 The County's claim of standing as a third-party beneficiary is also unavailing. The facts of the cases upon which the County relies for support of its claimed right to recover as a third-party beneficiary are distinguishable from the facts of this case, and neither holding controls. In *Ellis v. Gilbert*, 19 Utah 2d 189, 429 P.2d 39 (1967), the supreme court granted an interlocutory appeal to review a ruling of the trial court "that the defendant in a personal injury action must answer in discovery whether she is insured, and if so, the name of the insurer and the amount of coverage." *Id.* at 39–40.

---

6. The supreme court in *Campbell v. Stagg*, 596 P.2d 1037 (Utah 1979), cited the Texas case, *Pattison v. Highway Insurance Underwriters*, 278 S.W.2d 207 (Tex.Civ.App.1955), as an example of the kind of tort a tortfeasor's insurer might commit against the injured party so as to create a direct action in tort by the injured party against

the insurer. *See id.* at 1040. There, "plaintiffs alleged the insurer's agents fraudulently misrepresented the amount of coverage provided in the defendant's insurance policy, [thereby] inducing plaintiffs to sign a release agreement." *Id.* The County has not alleged any such tort by Progressive in this case.

The court held that because the injured party is

> in effect a third-party beneficiary of the insurance of a wrongdoer who injures him, ... [i]t is only reasonable that the plaintiff should have some means of discovering whether a policy exists, and what its provisions are so he can know whether covenants upon which his rights may depend are being complied with.

*Id.* at 41. A plain reading shows that the court's holding applies only to the narrow issue of cooperation in discovery. The court *did not* hold, as the County asserts here, that injured third parties have a right of direct action against the tortfeasor's insurer.

¶ 17 In *Peterson v. Western Casualty & Surety Co.*, 19 Utah 2d 26, 425 P.2d 769 (1967), the insurance policy in question "contained the usual provision that a judgment creditor of the insured may bring" suit directly against the tortfeasor's insurer. *Id.* at 770. Hence, the *Peterson* holding, which allowed a plaintiff to recover directly from the tortfeasor's insurer, came about because the insurer consented to such action in the language of the policy. *See id.* at 770, 772.

¶ 18 That the County may never collect on its judgment against Jensen is unfortunate; but until the Utah Legislature sees fit to adopt a rule allowing direct action by an injured party against a tortfeasor's insurer, the County has no right of action against Progressive directly, and no means to impel Jensen to obtain a settlement from Progressive in order to satisfy its judgment. *See Ammerman*, 430 P.2d at 578 ("The privilege of deciding whether to [sue one's insurer] should be up to [the tortfeasor] and not up to some third party to inject his interest into the matter.").[7]

## CONCLUSION

¶ 19 The County cannot bring a cause of action in contract directly against Progressive. Also, the County has no means to force Jensen to bring a claim against his insurer. Finally, the County has no tort claim against Progressive because Progressive has committed no tortious act against the County. Accordingly, we hold that the County lacks standing to bring its claims against Progressive and, therefore, we affirm the lower court's grant of summary judgement for Progressive and its denial of summary judgment for the County.

¶ 20 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and PAMELA T. GREENWOOD, Judge.

---

**7.** Because our holding that the County lacks standing to bring its claims against Progressive is dispositive, we do not reach the other issues raised by the County on appeal.