2004 UT App 111

### UNIVERSITY OF UTAH HOSPITAL and University of Utah, Plaintiffs and Appellants,

v.

### AMERICAN CASUALTY COMPANY OF READING, PA, Defendant and Appellee.

No. 20030070–CA.

Court of Appeals of Utah.

April 15, 2004.

David G. Williams, Julianne Blanch, and Terence L. Rooney, Snow, Christensen & Martineau, Salt Lake City, for Appellants.

Jaryl L. Rencher, Eppeson & Rencher, Salt Lake City, Alec M. Barinholtz and Jen-

nifer Mathis, Ross, Dixon & Bell, LLP, Irvine, California, for Appellee.

Before BILLINGS, P.J., BENCH, Associate P.J., and THORNE, J.

## OPINION

BENCH, Associate Presiding Judge:

¶ 1 The district court granted Defendant American Casualty's (American) motion for summary judgment. Plaintiffs University of Utah Hospital and University of Utah (collectively the University) appeal. We affirm.

## BACKGROUND

¶ 2 In April 1997, Abel Hepworth was admitted at the University for the surgical repair of a cerebral artery. In providing care to Mr. Hepworth, a nurse employed by the University (Nurse Broka) allegedly administered excess intravenous fluids to Mr. Hepworth, causing his death four days later.

¶ 3 Following Mr. Hepworth's death, his wife, Mrs. Hepworth, informed the University of her intention to file a medical malpractice lawsuit arising out of the care rendered to Mr. Hepworth. The University and its insurer, St. Paul Fire and Marine Insurance Company (St.Paul), began immediate settlement negotiations with Mrs. Hepworth.[1] In June 1997, the University wrote to Nurse Broka's personal professional liability insurer, American, and requested its participation in the settlement negotiations. American declined to participate in the negotiations, stating that Nurse Broka was an employee of the University and should be defended by the University.

¶ 4 In March 1998, the University and St. Paul reached a settlement with Mrs. Hepworth for a total of $1,323,523. The University paid $1 million out of its Self–Insurance Trust and St. Paul paid the remaining amount. The University advised American that the matter had been settled and that the University intended to seek recovery of its

settlement amount from American. American declined to reimburse the University.

¶ 5 The University ultimately filed an action against American to recover the $1 million paid out of its Self–Insurance Trust. The University sued on the basis of (1) subrogation, alleging breach of duty to defend Nurse Broka resulting in $8,459.20 in attorney fees, and (2) equitable subrogation, contending that American failed to pay all amounts for which Nurse Broka became legally obligated to pay, in the amount of $1 million. St. Paul filed a separate action for contribution against American, and both cases against American were consolidated.

¶ 6 Shortly thereafter, the University and St. Paul moved for summary judgment arguing that American's insurance policy was the primary coverage for Nurse Broka and that the University was entitled to reimbursement. The following month, American moved for summary judgment claiming that (1) its contractual obligation to indemnify Nurse Broka was never triggered because Mrs. Hepworth never made a claim directly against Nurse Broka, and (2) even if a claim had been made, Nurse Broka could not be held personally liable pursuant to the Utah Governmental Immunity Act. The court agreed and granted summary judgment in favor of American. The University now takes this appeal.[2]

## ISSUES AND STANDARD OF REVIEW

¶ 7 The issues before us are essentially (1) whether American was obligated to indemnify the University under the American insurance policy, although no claim was ever made directly against Nurse Broka, and (2) whether the Utah Governmental Immunity Act shields American from responsibility.

¶ 8 On appeal from a grant of summary judgment, we "review only questions of law. We review those conclusions for correctness, according no particular deference to the trial court." *Dikeou v. Osborn*, 881 P.2d 943, 945

---

1. The University self-insures its employees with professional liability insurance covering up to $1 million per occurrence. St. Paul provides the University with excess liability insurance covering amounts between $1 million and $5 million.

2. On stipulation of the parties, this court dismissed St. Paul's separate appeal.

(Utah Ct.App.1994) (quotations and citations omitted).

## ANALYSIS

### I. American's obligations under its insurance policy

#### Duty to Defend

■ ¶ 9 The University first contends that American has a duty to defend Nurse Broka. The American insurance policy (the policy) covering Nurse Broka provides that American has "the right and will defend any claim" with an attorney of its choice. Furthermore, the policy defines a "claim" as "the receipt by you of a demand for money or services naming you and alleging a medical incident." Nothing in the record shows that a claim was ever made against Nurse Broka. Mrs. Hepworth brought her wrongful death claim directly and solely against the University. At no point did Mrs. Hepworth modify her claim against the University by naming Nurse Broka as a defendant, or bring a separate suit against Nurse Broka.

#### Duty to Indemnify

■ ¶ 10 The University further contends that the policy requires American to indemnify Nurse Broka and the University for the monies paid for the settlement with Mrs. Hepworth. American concedes that it has a duty to indemnify Nurse Broka, but only under specific circumstances. Page five of the policy provides that American will pay amounts that Nurse Broka becomes "legally obligated to pay as a result of injury or damage caused by a medical incident" for which he is liable. In other words, if Nurse Broka is "legally obligated to pay" some amount as a result of a medical incident, then American is required to indemnify Nurse Broka.

¶ 11 Although "legally obligated to pay" is not explicitly defined in the policy, other provisions of the policy are helpful in interpreting the meaning of "legally obligated to pay." Under the "Legal Action Limitation" provision on page two of the policy, the insured may not bring any legal action against American until "the amount of your obligation to pay has been decided. Such amount can be set by judgment against you after actual trial or by written agreement between you, us and the claimant." When the phrase "legally obligated to pay" is read in conjunction with the "Legal Action Limitation" provision, we may reasonably conclude that "legally obligated to pay" occurs via a judgment following an actual trial, or an enforceable agreement between Nurse Broka, American, and Mrs. Hepworth. See Nielsen v. O'Reilly, 848 P.2d 664, 665 (Utah 1992) (holding that "the terms of insurance contracts, as well as all contracts, are to be interpreted in accordance with their usually accepted meanings and should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions").

■ ¶ 12 The University argues that it became subrogated to Nurse Broka's rights under the policy. Effectively, the doctrine of equitable subrogation "allows a person or entity which pays the loss or satisfies the claim of another under a legally cognizable obligation or interest to step into the shoes of the other person and assert that person's rights." State Farm Mut. Auto. Ins. Co. v. Northwestern Nat'l Ins. Co., 912 P.2d 983, 985 (Utah 1996). However, the doctrine does not provide the subrogee any right the other party did not have. Pursuant to the policy, Nurse Broka has rights against American to defend or indemnify him when a claim is brought against him. However, no claim was ever made directly against Nurse Broka. Nor did Nurse Broka incur any costs to defend himself in connection with Mrs. Hepworth's claims against the University. Likewise, even if the University was a valid subrogee, the University could not expect American to defend and indemnify the University because no claim was ever brought against Nurse Broka. Furthermore, there has been no judicial determination of Nurse Broka's liability to the Hepworths nor was there any settlement in which Nurse Broka personally participated. Therefore, American is not required to indemnify Nurse Broka or the University as a matter of law.

## II. The Utah Governmental Immunity Act

■ ¶ 13 An additional basis for affirmance is that Nurse Broka could not be held

personally liable under the Utah Governmental Immunity Act (the Act). Section 63–30–36 of the Act provides that "a governmental entity shall defend any action brought against its employee arising from an act or omission occurring: (a) during the performance of the employee's duties; (b) within the scope of the employee's employment; or (c) under color of authority." Utah Code Ann. § 63–30–36 (2003). Additionally, "if a governmental entity pays all or part of a judgment based on or a compromise or settlement of a claim against the governmental entity or an employee, the employee may not be required to indemnify the governmental entity for the payment." *Id.* at § 63–30–38. Contrary to the University's assertion, we fail to see how the above provisions do not apply to this case. Nurse Broka was an employee of the University. *See Frank v. State,* 613 P.2d 517, 519 (Utah 1980) (holding that the University of Utah Medical Center is a governmental entity). Nurse Broka was performing his duties and acting within the scope of his employment when he provided medical care to Mr. Hepworth at the University. Therefore, Nurse Broka cannot be required to indemnify the University.[3]

¶ 14 The University nonetheless argues that the Act does not preclude American, as Nurse Broka's personal insurer, from indemnifying Nurse Broka and the University. The Utah Supreme Court addressed this issue in *Gulf Ins. Co. v. Horace Mann Ins. Co.,* 567 P.2d 158 (Utah 1977). In *Gulf,* a student sued a teacher for an injury sustained in a shop class. *See id.* The teacher demanded that the school district defend him pursuant to the Utah Public Employees Indemnification Act, which contained provisions analogous to those of the Utah Governmental Immunity Act.[4] *See id.* The school district referred the matter to its insurer, Gulf, which, in turn, made demand upon Horace Mann, the teacher's personal insurer, to de-

fend the suit. *See id.* Horace Mann refused, claiming that the primary responsibility rested with the district and its insurer Gulf. *See id.* Gulf argued that despite the statutory immunity protection afforded under the Utah Public Employees Indemnification Act, Horace Mann, as the teacher's insurer, still should be required to participate. *See id.* The *Gulf* court disagreed and reasoned that each of the insurers should be regarded as "standing in the shoes of its own insured and ... it is appropriate to determine who would bear the loss if no insurance existed." *Id.* at 160. The court explained that "under the common law, any liability would be upon the teacher, ... and his insurer (Horace Mann) would be obliged to step into his shoes and defend him. However, the Utah Public Employees Indemnification Act has altered this." *Id.* The court further explained that "the statute shifts liability to the school district," *id.,* while providing "that if the public entity pays such a claim, the entity cannot seek reimbursement from its employee." *Id.* Just as Gulf was prevented from seeking recovery from the teacher, the University here cannot seek reimbursement or indemnification from Nurse Broka or his personal insurer American.

## CONCLUSION

¶ 15 For the foregoing reasons, American is not obligated to indemnify the University for any amount.

¶ 16 We therefore affirm.

¶ 17 I CONCUR: WILLIAM A. THORNE, JR., Judge.

¶ 18 I CONCUR IN THE RESULT: JUDITH M. BILLINGS, Presiding Judge.

---

3. The University claims that the policy was "illusory" under the Act because the policy did not provide any real coverage. We disagree. The policy covered all of Nurse Broka's professional conduct, including conduct outside of his employment with the University, such as when providing nursing care to family members, friends or neighbors. Furthermore, the policy also provided assault coverage and personal liability coverage for non-business activities.

4. The Utah Public Employees Indemnification Act, now repealed, protected employees of public entities from personal liability arising from acts committed during the performance of their duties and within the scope of their employment. *See* Utah Code Ann. § 63–48–1 (1953). That act further provided that the employee is not liable to indemnify the public entity if the entity pays all or part of the judgment against the employee. *See id.* at § 63–48–5.